UNITED STATES *v.* NATIONAL CITY LINES, INC. ET AL.

No. 269, Misc. Argued February 8, 1949.—Decided May 31, 1949.

*Charles H. Weston* argued the cause for the United States. With him on the brief were *George T. Washing-*

*ton,* Acting Solicitor General, *Assistant Attorney General* Bergson and *Philip Elman.*

*C. Frank Reavis* argued the cause for respondents. With him on the brief were *Martin D. Jacobs, Oscar A. Trippet, Henry M. Hogan, H. D. Emery, Rayburn L. Foster, R. B. F. Hummer, Hubert T. Morrow, Marshall P. Madison, Eugene M. Prince, Francis R. Kirkham* and *Everett A. Mathews.*

*Marland Gale* was also on a brief with *Mr. Reavis* and *Mr. Jacobs* for the National City Lines, Inc., and Pacific City Lines, Inc., respondents. *Horace G. Hitchcock* was also of counsel for the Mack Manufacturing Corp., respondent.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The issue here is whether the 1948 revision of the Judicial Code (Title 28, United States Code) extends the doctrine of *forum non conveniens* to antitrust suits. The Government's complaint in this civil suit alleged that respondent corporations have conspired to obtain control of local transportation companies in at least 44 cities in 16 states in different sections of the country, in order to restrain and monopolize interstate commerce in busses and the petroleum and other supplies incident thereto, in violation of §§ 1 and 2 of the Sherman Act, 26 Stat. 209, 15 U. S. C. §§ 1, 2.

This is the second time that an order of the court below, the United States District Court for the Southern District of California, attempting to effectuate a transfer of the case from Los Angeles to Chicago, has been before this Court. When respondents' motion was first granted, the District Court dismissed the action, 7 F. R. D. 456 (1947), inasmuch as the federal courts then lacked statutory power to transfer cases. We reversed, holding that

*forum non conveniens* was not applicable in antitrust suits. *United States* v. *National City Lines*, 334 U. S. 573 (June 7, 1948). After September 1, 1948, the effective date of the present Judicial Code,[1] respondents filed a new motion under the doctrine of *forum non conveniens*, citing § 1404 (a), which reads as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Again the District Court below granted the motion. It ordered the case transferred. 80 F. Supp. 734 (1948). The Government thereupon submitted in this Court a motion for leave to file petition for writ of certiorari. We assigned the case for hearing on this motion. 335 U. S. 897 (1948).

In taking the position that the District Court lacked authority to enter its order of transfer, the Government has advanced many of the arguments which we have already considered today—and rejected—in *Ex parte Collett, ante,* p. 55, and *Kilpatrick* v. *Texas & Pacific R. Co., ante,* p. 75, in which we held that actions under the Federal Employers' Liability Act were now subject to the doctrine of *forum non conveniens.* The Government contends, for example, that Congress intended § 1404 (a) to apply only to actions the venue provisions of which were formerly contained in Title 28, rather than to "any civil action" (the venue requirements in antitrust cases are defined in 15 U. S. C. § 22; in Liability Act cases, 45 U. S. C. § 56) ; and that the legislative history establishes very clearly that Congress had no desire substantially to

---

[1] Act of June 25, 1948, 62 Stat. 869, 992, § 38.

There has been apparently but one other reported case dealing with the instant issue. It is in accord with the holding below. *United States* v. *E. I. Du Pont de Nemours & Co.,* 83 F. Supp. 233 (1949).

See, generally, Note, *Venue in Antitrust Cases: Applicability of the New Discretionary Transfer Provision,* 58 Yale L. J. 482 (1949).

change the law—indeed, the Government urges us to disregard the reviser's notes which were printed in the House Reports.[2] We cannot accept this position for the reasons discussed in our previous decisions today. The reviser's notes are so obviously authoritative in perceiving the meaning of the Code that the Government itself, in discussing a section other than § 1404 (a), refers to them in its brief in this case. And we have already had occasion to look to the reviser's notes. *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368, 376, n. 12 (1949).

It is true that the reviser's notes to § 1404 (a), although citing a Federal Employers' Liability Act decision, make no reference to the antitrust laws or to our previous decision in this litigation. The Government therefore urges that our disposition of the Liability Act cases is not conclusive. We disagree. The notes cite the Liability Act decision "As an example of the need of such a provision." Obviously, an example is not a complete catalogue. The use of an example implies no purpose to restrict the meaning of the statutory phrase "any civil action" precisely to the illustration selected. Quite the contrary, the particular example noted demonstrates that Congress intended to effectuate changes in the law, in order to expand the transferability of cases. And the

---

[2] The note to § 1404 (a) appears at H. R. Rep. No. 308, 80th Cong., 1st Sess. A132 (1947) and H. R. Rep. No. 2646, 79th Cong., 2d Sess. A127 (1946). It reads as follows: "Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see *Baltimore & Ohio R. Co.* v. *Kepner,* 1941, 62 S. Ct. 6, 314 U. S. 44, 86 L. Ed. 28, which was prosecuted under the Federal Employer's [*sic*] Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."

change in antitrust practice seems no more radical than the change in Federal Employers' Liability Act practice: *Baltimore & O. R. Co.* v. *Kepner,* 314 U. S. 44 (1941), cited in the reviser's note, was decided over six years before our initial decision in this case, 334 U. S. 573 (1948), which was the first ruling by this Court that *forum non conveniens* was inapplicable in antitrust suits.

Although no explanation is needed for the lack of Congressional reference to our former decision, simple chronology may be consulted. The reviser's notes appeared in House Report No. 308, 80th Congress, 1st Sess., which was published in April, 1947. The Code revision was initially passed by the House in July, 1947.[3] With amendments, the revision was passed by the Senate on June 12, 1948,[4] and by the House on June 16, 1948.[5] Our decision in the first *National City Lines* case, 334 U. S. 573, was handed down on June 7, 1948. Clearly, the failure of Congress expressly to consider this decision proves nothing.

Nor was there anything in our decision which required unique Congressional discussion, in the face of the unmistakable statutory language and reviser's notes. We expressly held that "Congress' mandate regarding venue and the exercise of jurisdiction is binding upon the federal courts," 334 U. S. at 588–89, and that decision in this field must rest on "the legislative purpose and the effect of the language used . . .," *supra,* at 597. Nothing in our previous opinion intimates that we could fail to respect whatever modification of the law Congress might enact.

Moreover, this change in the law must have been known to the Government in time for it to have addressed

---

[3] 93 Cong. Rec. 8392 (1947).

[4] 94 Cong. Rec. 7930 (1948).

[5] 94 Cong. Rec. 8501 (1948).

the protests which we have heard to the Congress. This was admitted on the oral argument; it could not possibly have been denied. When this litigation was previously before us, National City's brief, at pp. 25–26 and 45, expressly called attention to the imminent probability that § 1404 (a) would be enacted and would be held applicable to antitrust suits. This brief was filed here on April 26, 1948. Not until June 7, 1948, was the final hearing on the Judicial Code revision held before the Senate Judiciary Subcommittee. Furthermore, the Code proposals were extensively publicized. See *Ex parte Collett, ante,* at pp. 67–68. The Department of Justice in particular was informed: each United States Attorney received a copy of the drafts;[6] a Department spokesman testified at the House hearing;[7] the Attorney General was asked for an opinion by the Congressional Committee.[8] The plain inference is either that the Government

---

[6] Hearings before House Committee on the Judiciary on H. R. 1600 and H. R. 2055, 80th Cong., 1st Sess. 8 (1947).

[7] Statement of Special Assistant to the Attorney General Baynton, *Ibid.,* 33–34. "With respect to the bill to codify title 28, the Department has been gathering memoranda from *all its various divisions* and from United States attorneys with the hope of making a comprehensible report on that bill. We have that material." (Emphasis added.) *Id.,* 34.

[8] Letter from Attorney General Tom C. Clark to Congressman Michener, Chairman of the Committee on the Judiciary, April 17, 1947, H. R. Rep. No. 308, 80th Cong., 1st Sess. 8 (1947). The letter declares that the objectives of the revision are "commendable and desirable," and continues as follows: "You will remember the discussions between members of the staff of the committee and of the Department last month at which the Department made some suggestions with reference to minor corrections of errors and omissions then in the draft of the bill being considered by your committee. "I am advised that this conference agreed upon a number of corrections and changes and that these corrections and changes have now been incorporated in the bill with the one exception of the [Tax Court] portion . . . ." See 93 Cong. Rec. 8385 (1947).

took no action with respect to the forthcoming alteration of the rule that *forum non conveniens* was inapplicable to antitrust suits, or that a protest was made which Congress disregarded. Neither alternative would offer the slightest justification for overriding the unequivocal words of § 1404 (a) and the legislative history which establishes that Congress indeed meant what it said.

For these reasons, we can find no distinction between this case and the others decided today. We hold that § 1404 (a) is applicable here. The motion is

*Denied.*

[For opinion of MR. JUSTICE RUTLEDGE concurring in the result, see *ante*, p. 72.]

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

There are difficulties for me however the case is decided. But I have concluded that the fairer result is reached if the ambiguities and doubts, fully canvassed and disclosed in the Court's opinions in this case and in *Ex parte Collett, ante*, p. 55, decided this day, are resolved by reading § 1404 (a) as making the doctrine of *forum non conveniens* applicable to any civil action as to which the venue provisions are codified in revised Title 28. That gives full effect to the words "any civil action" in the field in which Congress was legislating. And it authorizes, as respects that group of cases, a transfer to another district in lieu of outright dismissal as had previously obtained. That construction saves § 1404 (a), the venue provisions of the Clayton Act and our decision in *United States* v. *National City Lines, Inc.*, 334 U. S. 573, from mutilation. I am reluctant to conclude that Congress took the more drastic course in a mere revision of the code. So to hold would make a basic change not only in

the two statutes involved in these cases but in the Sherman Act, 15 U. S. C. §§ 4, 5; the Jones Act, 46 U. S. C. § 688; the Suits in Admiralty Act, 46 U. S. C. § 782; Merchant Marine Act of 1936, 46 U. S. C. § 1128d; the Securities Act, 15 U. S. C. §§ 77a, 77v; the Securities Exchange Act, 15 U. S. C. §§ 78a, 78aa; the Public Utility Holding Company Act, 15 U. S. C. §§ 79, 79y; the Investment Company Act, 15 U. S. C. §§ 80a–1, 80a–43; and perhaps in other statutes too.