**CINEMA AMUSEMENTS, Inc., v.
LOEW'S, Inc., et al.**

**Civ. A. No. 891.**

United States District Court
D. Delaware.

June 10, 1949.

320

John Van Brunt, Jr. (Killoran & Van Brunt), of Wilmington, Del., and Thurman Arnold and L. A. Nikoloric (Arnold, Fortas & Porter) of Washington, D. C., for plaintiff.

Richard F. Corroon (Southerland, Berl & Potter), of Wilmington, Del., and Richard P. Heppner, Roy W. McDonald and C. Stanley Thompson (Donovan, Leisure, Newton, Lumbard & Irvine), of New York City, for defendants Loew's, Inc., and RKO Pictures, Inc.

Daniel O. Hastings and Ayres J. Stockly (Hastings, Stockly, Walz & Wise), of Wilmington, Del., for defendant Twentieth Century-Fox Film Corporation.

RODNEY, District Judge.

The nature of this suit was indicated in a previous opinion upon objections to interrogatories. See Cinema Amusements v. Loew's, Inc., et al., D.C.Del., 1947, 7 F.R.D. 318. Subsequent thereto both parties have made certain motions. Plaintiff has moved under Rule 15(d), Federal Rules of Civil Procedure, 28 U.S.C.A., for leave to serve

and file a supplemental complaint. Defendants have moved under Rule 30(b) to vacate or modify a notice of the taking of certain depositions made by plaintiff.

■ Subsequent to the above motions but prior to their disposition by the court, the defendants moved pursuant to 28 U.S.C.A. § 1404(a) to transfer this action to the United States District Court for the District of Colorado. Disposition of the previous motions mentioned above has been withheld because if the defendants' motion to transfer were granted it would seem preferable that such motions be determined by the court trying the case. The disposition herein of the motion to transfer therefore renders unnecessary any further consideration by this court of the previous motions.

Plaintiff, suing civilly for treble damages under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 15 U.S.C.A. § 12 et seq., is an independent exhibitor of motion pictures in Denver, Colorado, operating in particular in that city the Broadway Theatre. Plaintiff substantially alleges that defendants, along with other major producer-distributors, have unlawfully conspired and combined to monopolize the exhibition of all desirable feature motion pictures in the United States by acquiring ownership or control of the vast majority of first and subsequent run theatres in the major cities of the United States and giving lower film rentals and priority of "runs" and exhibitions to such theatres and by using their power over copyrights to force independents to transfer control or profits of their theatres to the major producers. Plaintiff complains more particularly of the alleged conspiracy as it affects plaintiff in the operation of its Broadway Theatre in Denver, Colorado.

A jury trial has been demanded by plaintiff in accordance with the Rules. The action is at issue and counsel for both sides are apparently ready for early trial except for additional preparation which might be required by the disposition of the motion to serve and file the supplemental complaint and the motion to vacate or modify the taking of depositions.

■ The Supreme Court of the United States has determined, in United States v. National City Lines, 1949, 69 S.Ct. 955, that a civil action under the anti-trust laws, such as the instant action, may be transferred by the United States District Courts pursuant to 28 U.S.C.A. § 1404(a) upon a finding by such courts that the conditions of said section have been met. See also United States v. E. I. du Pont de Nemours & Co., D.C.D.C., 1949, 83 F.Supp. 233; Note, 58 Yale L.J. 482 (1949).

Section 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a).

Plaintiff does not dispute that the instant action could have been brought in the District of Colorado. Nor is it disputed by defendants that venue may be properly laid in the instant action here in the District of Delaware.

The venue section of the anti-trust laws provides that suit thereunder against a corporation "may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C.A. § 22. Two of the corporate defendants are organized and existing under the laws of the State of Delaware and are found and transacting business in the State of Delaware. The other corporate defendant is organized and existing under the laws of the State of New York but is found and transacts business in the State of Delaware. All three of the corporate defendants transact business and may be found in the State of Colorado. Plaintiff is a corporation organized and existing under the laws of the State of Colorado.

■ If transfer is otherwise authorized and warranted, therefore, it is clear that the District of Colorado is a proper district to which this action may be transferred under Section 1404(a).

Plaintiff urges first that transfer may not be had where the corporate defendants are domiciled in the state of the forum or where plaintiff sues in a forum which sat-

isfies all three alternative requirements of the venue section of the anti-trust laws [1] as to a majority of the defendants. Plaintiff's contention is predicated upon the assumption that Section 1404(a) is merely a codification of the doctrine of forum non conveniens, under which doctrine plaintiff urges its contentions are correct.

It is true that the criteria in Section 1404(a) justifying transfer are substantially identical with those which justify dismissal under the doctrine of forum non conveniens. Section 1404(a) authorizes transfers "for the convenience of parties and witnesses, in the interest of justice"; forum non conveniens required dismissal when the convenience of the parties and the ends of justice necessitated such action.[2] The Reviser's Notes to Section 1404(a) state that it was "drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." And it has been judicially stated that consideration of a motion under Section 1040(a) by the district court would be had in the light of the rules for the application of the doctrine of forum non conveniens as laid down by the United States Supreme Court. See Schoen v. Mountain Producers Corp., 3 Cir., 170 F.2d 707, 715, certiorari denied, 336 U.S. 937, 69 S.Ct. 746.

█ While the substantial factors to be weighed in determining a motion under Section 1404(a) may be similar to those involved in a consideration of forum non conveniens, yet it seems clear that transfer under Section 1404(a) is something more than and somewhat different from dismissal under forum non conveniens. In the first place, the procedure to be followed in affirmatively invoking the two remedies is drastically different. Under Section 1404(a) a case is not dismissed but merely transferred to the more convenient forum;

under forum non conveniens a case is dismissed and must be instituted anew in the more convenient forum, carrying with it the inherent and jeopardous hazard of being barred therein by the statute of limitations. The danger of having the action barred in such a manner was one of the principal reasons for Mr. Justice Black's dissent in Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 516, 67 S.Ct. 839, 91 L.Ed. 1055.

The doctrine of forum non conveniens has been held inapplicable to cases instituted under "special venue" statutes, such as actions arising under the Federal Employers' Liability Act, 45 U.S.C.A. § 151 et seq., and the anti-trust laws.[3] Such types of cases may be transferred under Section 1404(a), however. Ex parte Collett, 1949, 69 S.Ct. 944; United States v. National City Lines, 1949, 69 S.Ct. 955. In this respect, then, the two remedies are also different.

Forum non conveniens still exists independently from Section 1404(a), at least in connection with those cases instituted in federal courts when the more convenient forum is in a foreign jurisdiction. De Sairigne v. Gould, D.C.S.D.N.Y.,1949, 83 F.Supp. 270. The court in the cited case observed that if forum non conveniens were limited by virtue of being codified into Section 1404(a) the federal courts would be stripped of their inherent power to refuse jurisdiction in such cases. See Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 1932, 285 U.S. 413, 422-423, 52 S.Ct. 413, 76 L.Ed. 837. In this respect, therefore, the two remedies are also independent of each other.

█ Even if Section 1404(a) were nothing more than a codification of forum non conveniens, this (Third) Circuit has held that transfer under Section 1404(a) may be had where a majority of the defendant corporations are domiciled in the forum.

[1] Section 12 of the Clayton Act, 15 U.S.C.A. § 22.

[2] Koster v. (American) Lumbermens Mutual Cas. Co., 1947, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067. This has been the test from the earliest application of the doctrine, as is pointed out in

an excellent treatment of the doctrine in Note, 34 Va.L.Rev. 811 (1948).

[3] Baltimore & O. R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222 (Federal Employers' Liability Act); United States v. National City Lines, 1948, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (anti-trust laws).

Schoen v. Mountain Producers Corp., 3 Cir., 1948, 170 F.2d 707, 714, certiorari denied, 336 U.S. 937, 69 S.Ct. 746.[4] Indeed, following the Schoen decision this court has ordered transfer under Section 1404(a) in a case where the defendant corporation was domiciled in Delaware. Makela v. The Wilson Transit Co., 1949.[5]

Plaintiff relies principally upon Tivoli Realty, Inc. v. Interstate Circuit, Inc., et al., 5 Cir., 1948, 167 F.2d 155, certiorari denied, Interstate Circuit v. Tivoli Realty, Inc., 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762, for its other contention that forum non conveniens cannot be invoked when a majority of the defendants satisfy all three requirements of the "special venue" statute of the anti-trust laws, i. e., when a majority of the defendants are inhabitants of the forum, are found in the forum, and transact business in the forum. I am of the opinion that the cited case does not entirely support this contention. In the first place in the cited case the doctrine of forum non conveniens was not urged upon the court of the forum but rather upon the court of another forum in support of an application there for an injunction restraining plaintiff in the original suit in the first forum from taking any further action in such suit. The attempt to invoke forum non conveniens for such purpose was denied in view of another well-recognized doctrine under which federal district courts are not inclined to interfere by injunction with prior suits in other federal districts where the inequity is based solely upon inconvenience. For this reason, the court in the cited case held [167 F.2d 156] "as a matter of comity" that no injunction should issue against the plaintiff in a suit in another forum.

It would seem that the court in the cited case went further, however, and held that forum non conveniens was inapplicable in any event because there were not two federal forums in which the entire group of defendants was answerable to process and because venue was laid under a "special venue" statute. In the instant case, as pointed out above, there are at least two federal forums in which all three defendants are answerable to process, and the recent National City Lines decision by the Supreme Court removes "special venue" as an objection to transfer. So even if Section 1404(a) were merely a codification of forum non conveniens, the Tivoli case would not appear to be controlling,[6] and the other cases cited by plaintiff in this connection go no further.

There thus appears to be no objection in law to transfer in the instant case under Section 1404(a), and it remains to be determined only whether the facts before the court in the supporting and opposing affi-

---

[4] The United States Supreme Court, in Koster v. (American) Lumbermens Mutual Cas. Co., 1947, 330 U.S. 518, 527–528, 67 S.Ct. 828, 833, 91 L.Ed. 1067, stated: "Under modern conditions corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state. Place of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of forum non conveniens, which resists formalization and looks to the realities that make for doing justice."

This would indicate that domicile of defendant is not conclusive in application of forum non conveniens.

[5] No opinion for publication.

[6] The court in the Tivoli decision, 5 Cir., 167 F.2d 155, 157, does state that prima facie it is not oppressive or vexatious under forum non conveniens to sue a corporation within the judicial district that meets not only one but all three of the venue requirements of the "special venue" statute of the anti-trust laws. This dictum raises only a prima facie case in favor of plaintiff, and defendants contend that even if the statement has any materiality it does not hurt them because they naturally would have a prima facie burden to overcome if venue can be properly laid in this district, as they admit it can.

In the instant case, all three of the defendants may be found in and transact business in both Colorado and Delaware, so two of the "special venue" requirements are satisfied in both States. The mere fact of incorporation in Delaware is not in itself necessarily persuasive, as indicated by the Supreme Court in Koster v. (American) Lumbermens Mutual Cas. Co., supra, footnote 4.

davits and in the statements of counsel justify transfer within the standards set forth in said section.

### Convenience of Parties

Plaintiff is a corporation organized and existing under the laws of the State of Colorado with principal offices in Denver and apparently no offices in Delaware. The theatres which plaintiff owns and/or operates are located in the Denver area in Colorado, and the particular theatre involved in this case is the Broadway, which is located in "downtown Denver." Obviously the books, records and documents belonging to plaintiff would be located in Denver or its proximity.

Defendants R.K.O. and Loew's, Inc. are corporations organized and existing under the laws of the State of Delaware with their principal offices outside such State, apparently in New York City. Defendant Fox is a corporation organized and existing under the laws of the State of New York with principal offices apparently in New York City. All three defendants, doing business on a nationwide scale, maintain branch offices in Denver for the transaction of business in that area, and their records and documents concerning such transactions are virtually all located in Denver, as are, of course, their employees who transact such business.

Plaintiff points out that the "home" or "central" office of each of the defendants is in New York City, that the principal officer of each defendant in this case—the general sales manager—is located at such "home" or "central" office, that negotiations and contracts for the exhibition of films become binding only upon the approval of the principal officer at the "home" or "central" office, and that the employees of each of the defendants located in the Denver branch offices act merely as forwarding agents with respect to such negotiations and contracts and are charged only with routine administrative duties. From those facts, plaintiff contends that the really important representatives of the defendants in this case are the general sales managers located in New York City,

which of course is much nearer Wilmington than Denver, and that such representatives would of necessity be the ones to speak on behalf of the defendants in this case.

Defendants agree that certain of their "top officials" are located in New York City and that technically a license application by an exhibitor for a motion picture film normally does not become a binding contract until it is approved in the Home Office. Defendants state that the Home Office officials, however, merely establish broad sales policies and that in their specific decisions they must and do rely upon the knowledge and recommendations of the employees in the field. Defendants state that approval by the Home Office of a license application rests upon and is guided and governed by the knowledge, advice and recommendation of the employees staffed near the particular theatre involved and who carry on the normal day-to-day selling and negotiating in the various localities. Defendants also state that Denver falls with their Pacific Division and it is probable that certain of their managing officials from such Division will be called.

Defendants point out that to date all discovery proceedings, which have been extensive, have taken place in Denver, have involved records and persons, including their employees, located in Denver or its close proximity, and have in at least six instances involved the United States District Court in Denver. They contend that burdening the parties with applications and appearances before two different courts results in inconvenience to both parties.

Plaintiff states that most of its evidence will be in documentary form based upon records and books which are located in Denver but which have been photostated, and the photostats are in Washington in the possession of plaintiff's counsel. Because of the documentary nature of plaintiff's case, plaintiff states that it will not need information from the general sales managers of the defendants and thus explains its failure to examine any of them in discovery proceedings. Plaintiff also

points out that transfer will inconvenience it by requiring transportation of all the photostats from Washington to Denver.

Defendants urge that the importance plaintiff places upon the location of the defendants' general sales managers is destroyed by plaintiff's actual failure to examine the managers in discovery proceedings. Defendants, of course, argue that pre-trial discovery proceedings involving the managers has been unnecessary because they only acted upon the advice and recommendation of field employees in Denver and are relatively unimportant and should be so considered upon this motion.

Plaintiff, on the other hand, argues that the field employees cannot be important because defendants have examined them in only a cursory way upon pre-trial discovery proceedings. In answer to this, defendants indicate that such employees will be called in person at trial and thus extensive pre-trial procedure to obtain evidentiary matter was unnecessary as to such employees.

Of the three important representatives of plaintiff who will apparently testify at trial, two live or reside closer to Wilmington than to Denver and the third resides in Denver. There is some contradiction in the affidavits as to whether one of the first two lives or resides closer to Wilmington, but plaintiff should be in a better position to know the facts and its affidavit is accepted. The difference in distance as between Denver or Wilmington from the residence of either however, is not great.

■ Defendants have estimated that trial in Wilmington will burden them with an expense of between $9,000 and $11,000 in bringing witnesses here for trial and maintaining them until they are no longer needed at trial. Defendants also point out that their pertinent records located in Denver will have to be transported here if

transfer is not granted as requested.[7] It is, of course, common knowledge that antitrust litigation involves voluminous records and documents, especially for defendants. See, e. g., United States v. E. I. du Pont de Nemours & Co., D.C.D.C., 1949, 83 F.Supp. 233.

■ The foregoing indicates that insofar as convenience of parties is concerned, transfer should be ordered. Denver is clearly more convenient for defendants, and no evidence indicates that plaintiff has as much connection with Wilmington as even the defendants have. The proximity of plaintiff's counsel to Wilmington would appear to be plaintiff's only real tie to Wilmington insofar as convenience is concerned.

### Convenience of Witnesses

The convenience of the two respective forums to witnesses at trial necessarily is somewhat speculative at the present time, since the court is not possessed of definite information as to the precise witnesses to be called. Certain matters in this connection do seem relatively definite, however.

Of twenty-four depositions taken in this action to date, all of which have been taken in Denver, twenty-two of the deponents are residents of Denver or its surrounding area, one is a resident of Indianapolis, Indiana, and the other is a resident of San Francisco, California. If these witnesses are to testify in person, and defendants maintain that the presence of at least some of them at trial will be essential, then clearly the overwhelming majority will be greatly convenienced by trial in Denver.

It cannot be assumed that all of the depositions were taken with a view to subsequent introduction into evidence at trial. Defendants state that much of the matter elicited through the depositions was rele-

---

[7] The expense of defending anti-trust suits, even in forums convenient to defendants, can well be appreciated. The Government, in fact, has found such expense to be a weapon in its hands which can be used with telling effect. "Indeed, it has been the unvarying experience of the Antitrust Division that a pending prosecution has the same effect in breaking up restraints of trade as a conviction —that even the acquittal makes the defendants draw a breath of relief and resolve never to undergo such an expensive hazard again." Arnold, The Bottlenecks of Business, 1st Ed., 1940, p. 210; see Comment, 49 Yale L.J. 284, 290 (1939).

vant for discovery purposes but not as evidential matter to be introduced at trial. Plaintiff states that its depositions were taken upon the assumption that they were to be used at trial, but it appears that many of defendants' objections of irrelevancy to questions posed by plaintiff in the depositions were met with the reply that such questions were relevant for discovery purposes.

The six new depositions which plaintiff desires to take all involve deponents who live in Denver, and the above observations seem equally applicable to them.

The defendants state that they may call the managers of their Pacific Coast Divisions as witnesses, and these persons live on the West Coast.

The only witnesses which the record indicates that the defendants might call from the East are the sales managers in the respective Home Offices in New York City, but the defendants, who are naturally in a position to know the manner of presenting their defense, have deposed that the testimony of such persons, even if used, would be largely formal as to their administrative duties. And it is stated in the affidavit that defendants have not yet decided to use these persons as trial witnesses.

Plaintiff, on the other hand, states that it will call one witness who lives in Florida, one who lives in Indianapolis, Indiana, which is only some 150 miles closer to Wilmington than to Denver, and one who lives in Denver. Plaintiff also states that it has chosen certain other persons who live near Wilmington to testify and that such persons have been chosen especially with trial in Wilmington in mind. The number or names of these latter witnesses are not given, but it is said that if the action is transferred as requested plaintiff will either have to provide transportation for these witnesses to Denver, take their depositions, or find new witnesses near Denver to testify in their stead.

The inconvenience which would be caused these few witnesses for plaintiff by trial in Denver does not appear to offset appreciably the great inconvenience which would be caused other and apparently more numerous witnesses, including some of plaintiff's, by trial in Wilmington. The record indicates that a great number of witnesses who live in the Denver area will testify at trial, and the two or three-day trip by train to Wilmington if trial is had here will be a distinct inconvenience to them which could be eliminated by trial in Denver.

It clearly appears that convenience of trial witnesses would be greatly served by transfer of the case to Denver.

### Interest of Justice

[9] Manifestly the most important criterion in determining the advisability of transfer is the "interest of justice." In most cases, if the convenience of the parties and witnesses will be served by transfer it usually follows that justice will also be served by transfer.[8] This does not necessarily follow, however, and irrespective of the convenience to parties and witnesses, I am of the opinion that whether or not transfer will be ordered should be governed in large measure by the effect of transfer upon the "interest of justice."

Plaintiff has argued that because it is given a wide remedial choice of venue by Congress, its selection of venue, if within the broad limits granted by Congress, is conducive to the interest of justice and should not be disturbed unless there is a showing that plaintiff has abused its choice.

With reference to this contention, the nisi prius court in United States v. National City Lines,[9] stated that, "The legislative

---

8 While the statute, 1404(a), in language provides, "For the convenience of parties and witnesses, in the interest of justice," a case may be transferred, yet it has been considered that the "interest of justice" is a reason not only separate and distinct from the convenience of parties and witnesses but a necessary resultant factor from such conveniences. See Schoen v. Mountain Producers Corp., 3 Cir., 1948, 170 F.2d 707, 714; Reviser's Notes to Sec. 1404(a).

9 D.C., 80 F.Supp. 734, 740, motion for leave to file petition for certiorari denied, 1949, 69 S.Ct. 955.

history of the revision of the Judicial Code shows that the intent of the Congress was to overcome the absolute choice in cases of this character."

▋ The purpose of the wide choice of venue given to plaintiffs in anti-trust litigation was certainly to further the interest of justice by enabling plaintiffs to obtain redress in forums in which they can afford to sue, usually that of their own residence.

The requirement in Section 1404(a) that transfer be in the "interest of justice" provides a check against possible abuse of venue without disturbing the purpose behind the wide choice of venue given by Congress to anti-trust plaintiffs. Manifestly, no court would ever find transfer to a forum which is financially out of reach of an impecunious plaintiff to be in the "interest of justice." See Note, 58 Yale L.J. 482, 489–490.

In the instant case plaintiff has not taken advantage of the wide choice of venue given to it by Congress and brought suit in the forum of its own residence and at the locale of the alleged injuries, as it could have done, but instead has sought redress in a forum a long distance therefrom.

A review of all the facts and circumstances in this action convinces me that transfer of the action to Denver would be greatly in furtherance of the "interest of justice."

It should first be observed that the cause of action asserted by plaintiff is of a federal nature and is not dependent upon any particular or peculiar local state law. No question of applying the Erie doctrine and no peculiar local law with which this court might be assumed to be intimately familiar appear to be involved in the action.

▋ The controversy here involves a particular locality and area. It is true that a nation-wide conspiracy among defendants is alleged by plaintiff, but in order to recover plaintiff must also prove injury to itself as a result of action of defendants pursuant to the nation-wide conspiracy. See Tivoli Realty v. Paramount Pictures, D.C.Del.,1948, 80 F.Supp. 800, 805–806. On this latter phase of the case,

which is the real issue in the action, the peculiar geographic and economic conditions in the city of Denver, especially with respect to the theatre situation, are extremely important.

The business and property of plaintiff which must be injured, and against which it must be shown defendants have conspired, before plaintiff can recover in this suit is located in "downtown Denver." Plaintiff contends that its Broadway theatre is comparable or superior in equipment, appointments, convenience and desirability to the largest and best first-run theatres in the Denver area and thus is entitled to first-run and similar privileges. Defendants contend to the contrary and assert that the denial of such privileges is reasonable from a business viewpoint and is not the result of any conspiracy among defendants. Manifestly an important phase of the case will be the relative suitability and desirability of the various theatres in the Denver area, and this in turn will depend upon the respective attractiveness, equipment, accessibility, size, location and other similar qualities of such various theatres.

Trial of this action in Denver, with the jury composed of persons residing in the Denver area, will obviously serve the administration of justice. A view of the various premises involved may well be appropriate, and only with trial in Denver can such a view be had.

On the other hand, if trial is had in Wilmington, the necessary artificiality of the evidence in connection with the comparable superiority of the various theatres would almost make a mockery of the jury system and the purposes behind it.

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055.

328

█ The convenience of the parties and witnesses, and the interest of justice, will be greatly served by transfer of the case as requested. Defendants have asked for transfer from a forum distant from plaintiff's residence and the locale of the alleged injuries to a forum which is the plaintiff's residence and includes the locale of the alleged injuries. Indeed, it would seem that defendants have sought to give to the plaintiff what Congress gave to it in the broad venue provisions of the anti-trust laws, viz., a forum within easy financial reach of plaintiff.

An order may be submitted transferring the action as requested.