Charles M. LAKE, Trustee in Bankruptcy of Eugene M. Callis, Appellant,

v.

NEW YORK LIFE INSURANCE COMPANY, Reliance Life Insurance Company of Pittsburgh, The Equitable Life Assurance Society of the United States, The John Hancock Mutual Life Insurance Company, and The Union Central Life Insurance, Company, Appellees.

No. 6892.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1954.

Decided Jan. 5, 1955.

Frank B. Ober, Baltimore, Md. (Ober, Williams, Grimes & Stinson and David Ross, Baltimore, Md., on the brief), for appellants.

G. C. A. Anderson and Hilary W. Gans, Baltimore, Md. (Biscoe L. Gray, F. Fulton Bramble and John F. King, Baltimore, Md., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The trustee in bankruptcy of Eugene M. Callis brought five suits against five life insurance companies which had insured Callis' life for $230,000, and had loaned Callis, after the filing of the petition in bankruptcy, the aggregate sum of $45,334.28, taking assignments of the policies as security for the loans. The suits were brought to recover the cash surrender value of the policies as of the date of the filing of the petition, aggregating $45,702.44, and were consolidated for trial. The District Judge held, 122 F.Supp. 348, that the recovery of the trustee should be limited to the cash surrender value, less the amounts of the loans, and the trustee appealed.

An involuntary petition in bankruptcy was filed against Callis and a receiver for his estate was appointed on August 6, 1951. By August 21, 1951 the receiver had taken possession of all or the greater portion of the known assets of the bankrupt, including a dairy farm and business, which were ultimately sold for approximately $400,000. Between August 21 and August 29 Callis applied for and received the loans from the Insurance Companies, representing in all of the applications except one that no bankruptcy proceedings were pending against him. None of the insurance companies had knowledge of these proceedings when the loans were made.

Callis deposited the proceeds of the loans in a bank account in the name of his wife, and she signed and delivered to him 150 blank checks drawn against the account. He was adjudicated a bankrupt on September 24, 1951 but failed to list the insurance policies in his schedules. Their existence was discovered during the examination of the bankrupt under § 21, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, on October 29, 1951. The trustee then instituted turnover proceedings against Mrs. Callis and later Miss Hurst, a business associate of the bankrupt, to recover the policies and the proceeds of the loans that could be found. As a result of these proceedings the policies were obtained from Mrs. Callis and Miss Hurst, and $6,261.57 was recovered from bank accounts belonging to Mrs. Callis. The District Judge did not find it necessary to determine how much of the above sum represented the remainder of the loan proceeds and how much was due to other dealings of the bankrupt. Whatever that amount may be, the trustee concedes that the insurance companies are entitled to a credit for it.

Callis used the major portion of the proceeds of the loans, without the knowledge of the trustee, in the payment of debts due certain of his creditors; and the claim is made, which will be later considered, that the company should receive credits for these payments.

On January 15, 1952, after the fraud had been discovered, the trustee requested the companies to state the cash surrender values of the policies as of August 6, 1951, when the petition in bankruptcy was filed. Upon receipt of the information, which was contained in the

replies of the insurance companies, the trustee notified Callis and tendered him the option of paying the amount of these values and retaining the policies in force, pursuant to his right under § 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5), but the bankrupt failed to exercise the right given him by the statute. After the recovery of the policies from Mrs. Callis and Miss Hurst, the trustee demanded the cash surrender values thereof from the insurance companies. This demand was rejected and the present suit was instituted.

The trustee's claim is based on § 70, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 110,[1] which provides that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy to the following kinds of properties, amongst others: documents relating to his property; powers which he might have exercised for his own benefit; and property including rights of action which prior to the filing of the petition he could by any means have transferred. Section 70, sub. a, also contains the following proviso with reference to insurance policies issued to the bankrupt.

"* * * And provided further, That when any bankrupt, who is a natural person, shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the

---

1. Sec. 70. "Title to property. (a) The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition * * * to all of the following kinds of property wherever located

"(1) documents relating to his property; * * * (3) powers which he might have exercised for his own benefit, * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred * * *. And provided further, That when any bankrupt, who is a natural person, shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; * * *.

* * * * * *

"(d) After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—

"(1) A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred;

"(2) A person indebted to the bankrupt or holding property of the bankrupt may, if acting in good faith, pay such indebtedness or deliver such property, or any part thereof, to the bankrupt or upon his order, with the same effect as if the bankruptcy were not pending;

"(3) A person having actual knowledge of such pending bankruptcy shall be deemed not to act in good faith unless he has reasonable cause to believe that the petition in bankruptcy is not well founded;

"(4) The provisions of paragraphs (1) and (2) of this subdivision shall not apply where a receiver or trustee appointed by a United States or State court is in possession of all or the greater portion of the non-exempt property of the bankrupt;

"(5) A person asserting the validity of a transfer under this subdivision shall have the burden of proof. Except as otherwise provided in this subdivision and in subdivision g of section 21 of this Act, no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee: Provided, however, That nothing in this Act shall impair the negotiability of currency or negotiable instruments."

same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets".

The important question in this case turns on the construction of this statute. It has long been the law that the title of a bankrupt to his property passes to the trustee at some point in the course of the proceeding in bankruptcy; and controversies have arisen as to the rights of persons dealing with the bankrupt without notice of the proceeding after it has been instituted. Under the Bankruptcy Act of 1867, R.S. 980 § 5044, title passed to the trustee as of the date of filing the petition; and in International Bank v. Sherman, 11 Otto. 403, 101 U.S. 403, 25 L.Ed. 866, where a bank without notice loaned money on securities transferred to it by a bankrupt after the bankruptcy proceedings were instituted, the court held that the filing of the petition was a caveat to all the world and that the assignee in bankruptcy was entitled to receive the property.

Later the Bankruptcy Act of 1898, 30 Stat. 565, U.S.Comp.Stat.1901, p. 3451, provided that the title to the bankrupt's property vested in the trustee as of the date of adjudication, and it was held in Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405, that under this Act, as under the Act of 1867, the filing of the petition is a caveat to all the world and in effect an attachment and an injunction. Cases of hardship, however, occurred in which a trustee in bankruptcy sought recovery of money or property belonging to the bankruptcy estate which other persons, without notice of the bankruptcy proceedings, had paid out or transferred on the authority of the bankrupt; and the courts did not give full effect to the pronouncements of the Supreme Court. In some decisions under the Act of 1898 it was held that payments to the bankrupt after the filing of the petition were invalid, while in others it was held that the trustee took the property at the date of adjudication and that prior transactions between the bankrupt and persons without notice were not affected. See the discussion in Stone v. Superior Fire Ins. Co., 278 Pa. 400, 123 A. 333, 31 A.L.R. 248, Annotation 254; See also In re Zotti, 2 Cir., 186 F. 84; Citizens' Union Nat. Bank v. Johnson, 6 Cir., 286 F. 527, 31 A.L.R. 255; Collier on Bankruptcy, Vol. 4, Par. 70.05, p. 952; Par. 70.66, p. 1326.

The Supreme Court itself did not adhere strictly to the general rule which it had laid down. Thus in Frederick v. Fidelity Mut. Life Ins. Co., 256 U.S. 395, 41 S.Ct. 503, 65 L.Ed. 1009, it held that a trustee in bankruptcy was not entitled to the cash surrender value of an insurance policy on the life of the bankrupt, the proceeds of the policy having been previously paid by the Insurance Company without notice of the bankruptcy proceedings to the beneficiary named in the policy upon the death of the bankrupt after the adjudication. The insured had the right under the policy to change the beneficiary. The court referred to earlier decisions [2] in which it had held that the trustee in bankruptcy took title to the surrender value of policies of insurance on the life of the bankrupt which were unmatured and in the hands of the bankrupt when the question arose; but the court held that under the policy in the case before it the company was obligated to pay the amount of the proceeds of the policy to the beneficiary on proof of death, unless the policy had been surrendered and the beneficiary

---

2. Burlingham v. Crouse, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920; Everett v. Judson, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927; Cohen v. Samuels, 245 U.S. 50, 53, 38 S.Ct. 36, 62 L.Ed. 143; Cohn v. Malone, 248 U.S. 450, 39 S.Ct. 141, 63 L.Ed. 352.

had been changed, and that as the company had complied with this obligation without notice of the bankruptcy proceedings, the trustee had no right to the surrender value of the policy, as by a change of beneficiary, without timely notice to the company of a demand for the change. The court said that it was not enough to sustain the trustee's claim to say that the filing of the petition in bankruptcy was a caveat to all the world because the right arose out of a contract under which the insurance company had rights as well as the insured.

The uncertainty and confusion of the courts as to when protection should be given to transactions between the bankrupt and innocent third persons after the filing of the petition in bankruptcy led to the amendment of § 70 in the revision of the Bankruptcy statute by the Chandler Act of 1938, and particularly to the addition of subsection d thereof. It was so stated by the Chairman of the Committee of the House of Representatives in House Report No. 1409 on H.R. 8046, 75th Cong., 1st Sess., and also in the analysis of H.R. 12,-889, 74th Cong., 2d Sess., which was prepared for the use of the Committee by the reviser and printed as a committee document.[3] Therein specific reference was made to the decision of the Supreme Court in the Frederick case as a contributing factor. These comments are particularly significant because, as the Supreme Court has pointed out in United States v. National City Lines, 337 U.S. 78, 80, 69 S.Ct. 955, 93 L.Ed. 1226, weight may properly be given to the reviser's notes in determining the meaning and purpose of the statute.

In the revised Act of 1938, § 70, sub. a, provides that the trustee shall be vested with the title of the bankrupt as of the date of the filing of the petition to certain specified "kinds of property" which are thereafter enumerated as they appeared in the Act of 1898 which was in force when the Supreme Court decided the Frederick and other insurance cases above cited. The kinds of property listed in section 70, sub. a, include documents relating to bankrupt's property powers which he might have exercised for his own benefit, and property including rights of action which, prior to the filing of the petition, he could by any means have transferred. It is firmly established by these cases that the surrender value of a policy of life insurance payable to the bankrupt is an asset to which the trustee in bankruptcy is entitled under the statute.

The new matter in the statute is found in § 70, sub. d, which has a direct bearing on the problem before the court. It provides specifically for certain protected transactions which occur after bankruptcy and either before adjudication or before a receiver takes possession of the bankrupt's property, whichever first occurs. As to these the statute provides (1) that any transfer of property, except real estate, made to a person acting in good faith, shall be valid against the trustee to the extent that the transferee pays the fair equivalent value thereof; and (2) that a person indebted to the bankrupt or holding property of the bankrupt may, if acting in good faith, pay the indebtedness or deliver the property to the bankrupt with the same effect as if the bankruptcy were not pending.

It is, however, provided in paragraph (4) of subsection d that the provisions of paragraphs (1) and (2) shall not apply where a receiver or trustee is in possession of all or the greater portion of the non-exempt property of the bankrupt. Moreover, paragraph (5) provides that except as otherwise provided, no transfer by or on behalf of the bankrupt[4] after the date of bankruptcy shall be valid against the trustee.

---

3. Collier on Bankruptcy, Pars. 70.67, 70.-68, pp. 1331, 1337; See James Angell McLaughlin, 40 H.L.R. 583, 614.

4. As pointed out in Collier on Bankruptcy, Par. 70.68, p. 1332, this clause was intended also to cover transfers *to* a bankrupt.

■ It is obvious that the intent of this enactment is to invalidate transactions not granted specific protection under the Act and thus put to an end the confusion theretofore existing in the decisions. There is almost always some injustice or hardship which attends transactions occurring after the filing of a petition in bankruptcy between the bankrupt, acting wrongfully, and an innocent third person, because the loss must fall either upon the third person or upon the creditors of the bankrupt. Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say. The line has in fact been drawn by competent authority and it is no longer necessary for the courts to make the attempt, which has not been conspicuously successful in the past, to decide cases on the facts as they arise and to draw a fine distinction between transactions which should be protected and those which should not. It is significant that Congress has substituted for the doctrine that the mere filing of a bankruptcy proceeding is a caveat to all the world, the specific provision that the taking possession by a receiver or trustee of all or the greater portion of the property of the bankrupt shall constitute public notice and nullify the protective provisions relating to transfers of the bankrupt's property and the payment of indebtedness or delivery of property to him, set out in paragraphs (1) and (2) of § 70, sub. d.

The present case falls outside the class of protected transactions because the loans on the security of the policies were made after August 6th, when the petition in bankruptcy was filed, and after August 9th, when the receiver took possession of all the known assets of the bankrupt. Therefore by the express terms of the introductory words of subsection d and by the language of paragraph (4) thereof, the transactions were not covered; but they were within the terms of paragraph (5) which in-validates transfers by or to the bankrupt after the date of bankruptcy.

We cannot accept the argument advanced by the companies that subsection d has no application to life insurance because the decision in the Frederick case was not specifically overruled by Congress. That decision belongs to the period when the courts in the absence of a clear mandate of Congress were endeavoring to work out a guiding rule under the facts of the cases as they arose; but that mandate has now been laid down and the Frederick case may no longer be accepted as a governing authority.

Nor do we agree that Congress, by retaining the proviso as to life insurance policies in paragraph (5) of § 70, sub. a, has recognized life insurance as a separate and unique type of property and has segregated it from all other property of the bankrupt which is listed in § 70, sub. a, and made subject to the provisions of § 70, sub. d. The companies do not deny that the trustee is entitled as against the bankrupt to the surrender value of his policies of insurance as of the date of the filing of the petition, provided the trustee complies with the terms of the proviso in § 70, sub. a(5) and with the terms of the policies; but they contend that § 70, sub. d has no application to life insurance, seemingly because the right to the surrender value is conditional upon the compliance with the terms of the policy as to the payment of premiums and as to the surrender of the policy upon the payment of its value to the holder.

The obvious answer is that the trustee takes the property of the bankrupt whether his title thereto is absolute or conditional, and if the trustee complies with the condition of a life insurance contract, the company must pay its value to him. It is true that Congress has recognized the peculiar quality of life insurance and the part it may play in rehabilitating the bankrupt by enabling him to protect his dependents, and

has provided that he may retain his insurance upon paying its surrender value to the trustee; but this purpose can be carried out without exempting life insurance from the other provisions of the section. The proviso, it may be noted, occurs in that portion of the section which lists the property which the trustee acquires; and it does not limit the effect of the provisions of subsection d. It follows that if the trustee establishes a right to the surrender value, it is subject to the protective and affirmative provisions of subsection d like any other property.

■ The companies make an additional contention which the District Judge properly rejected. They say that when the trustee discovered the fraud he had the choice either to demand the surrender value of the policies from the company, as he is doing in the present suit, or to take action to recover the proceeds of the loans; and that he elected first to pursue the latter alternative by instituting recovery proceedings before the referee. It is now contended that by taking this course he ratified the action of the bankrupt in accepting the loans from the companies and disabled himself from later demanding that the company pay the cash surrender value just as if the loans had not been made.

■ The doctrine of election of remedies is too uncertain of application to be used without reference to the facts of the particular case, and it should not be applied in the instant case, since the election of the trustee first to institute recovery proceedings against persons in possession of assets of the bankrupt did the companies no harm, but on the contrary resulted in the recovery of funds which reduce the trustee's claims. Whether a choice of remedies has been followed by a material change of position detrimental to a party subsequently sued is an element which may be considered in the application of the doctrine. See North American Graphite Corp. v. Allan, 87

U.S.App.D.C. 154, 184 F.2d 387; Restatement of Contracts, § 381.

Moreover, there was no inconsistency between the two actions. Indeed the recovery action was a useful preliminary because therein the trustee recovered possession of the policies which he later tendered to the companies as required by the terms of the contracts when he made demand for the surrender values. The trustee was entitled to the money in the hands of the wife of the bankrupt belonging to the estate, and it was his duty to go after it at once rather than take the chance of losing it. As was said in an analogous situation in Anderson v. Abbott, 321 U.S. 349, 355, 64 S.Ct. 531, 534, 88 L.Ed. 793: "If the receiver were barred from proceeding against one because he had already proceeded against the other, creditors of banks would be deprived of the full benefits of these statutes. The wisdom of the receiver's first suit rather than the fixed statutory liability would be the measure of their protection. There is no justification for such an impairment of the statutory scheme." See also Thomas v. Sugarman, 218 U.S. 129, 30 S.Ct. 650, 54 L.Ed. 967; cf. Henderson Tire & Rubber Co. v. Gregory, 8 Cir., 16 F.2d 589, 49 A.L.R. 1503; United States Fidelity & Guaranty Co. v. First Nat. Bank, 5 Cir., 172 F.2d 258.

■ Somewhat akin to the defense of election of remedies is the additional contention of the companies that the trustee was estopped to claim the cash surrender value because he recovered a portion of the proceeds of the loans by virtue of a turnover order in a proceeding before the referee in bankruptcy, in which the referee expressed the opinion that the trustee was entitled to the money because the cash surrender values of the policies had been converted into the bank deposit in the name of the bankrupt's wife, and the trustee was entitled to the policies in order to recover any cash surrender values remaining unpaid. We do not read the referee's opinion as holding that the trustee was

entitled to recover from the companies only the difference between the cash surrender value and the amount of the loans; but in any event, that matter was not before him for decision and the companies were not parties to the suit, and hence his order does not estop the trustee from prosecuting the present actions.

■ The final argument of the insurance companies concerns what they call estoppel by acts. The loan proceeds were used in large part to satisfy certain debts of the bankrupt, and thereby the estate was benefited. It is contended that the trustee had constructive knowledge that these payments were being made since they were made by a bookkeeper in his employ and hence the estate should not be allowed to benefit at the expense of the companies. This argument cannot be sustained. The trustee had no actual knowledge that the debts were being paid since the clerk who made them was a former employee of Callis and did not disclose his operations. No representations were made by the trustee to the companies upon which they relied and certainly they were not injured by the seizure of the money in the bank account. We perceive no element of estoppel in these actions of the trustee.

We do not mean to hold that the use of the proceeds of the loans to pay debts of the bankrupt has no bearing on the rights of the parties to the case. But, in the present state of the record, the questions involved cannot be determined. It was not necessary for the District Judge to consider the matter in the view that he took of the main controversy. He noted, however, that the evidence did not show which of the debts were entitled to priority and which were claims of general creditors and consequently additional evidence would be required if it should become necessary to determine the legal effect of the use of the money in the manner indicated. These questions have not been fully considered by the attorney for the trustee and have not been dis-

cussed at all by the attorneys for the companies. The case will therefore be remanded for further proceedings in which additional testimony may be taken if desired and all questions left undecided may be determined.

Reversed and remanded.