**FERGUSON et al. v. FORD MOTOR CO. et al.**

United States District Court
S. D. New York.

Jan. 6, 1950.

Appeal Dismissed May 8, 1950.
See 182 F.2d 329.

See also 8 F.R.D. 414.

Cahill, Gordon, Zachry & Reindel, New York City, for plaintiffs.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, New York City, for Ford Motor Co., Henry Ford II, Ernest R. Breech and John R. Davis.

Cravath, Swaine & Moore, New York City, for Dearborn Motors Corporation and Ernest G. Kanzler.

Duncombe & Pleasants, New York City, for Sherman Tractor & Equipment Co.

RYAN, District Judge.

Defendants move to transfer this action to the United States District Court for the Eastern District of Michigan, Southern Division at Detroit, Michigan, pursuant to Section 1404(a), 28 U.S.C.A.

The nature of this action was fully set forth by me in an earlier opinion at 1948, 77 F.Supp. 425 and a statement of the facts may there be found. That opinion was on motions made by defendants who had then been served [1], to dismiss the action on the ground of *forum non conveniens*. On April 21, 1948, I denied the motions on two grounds: (1) the doctrine of *forum non conveniens* was inapplicable as a matter of law because the action was one arising under the anti-trust laws, and (2) the defendants failed to show that even were the doctrine applicable, the facts as they then appeared justified dismissal. Since that time, this litigation has proceeded apace with extensive pre-trial proceedings. Five judges of this court[2] have considered and

---

[1]. Seven of the twelve-named defendants have been served with process in this action—Ford Motor Co., Henry Ford, II, Ernest C. Breech, John R. Davis, Dearborn Motors Corp., Ernest Kanzler and Sherman Tractor & Equipment Co.

[2]. Judges Alfred C. Coxe, John J. Clancy, Simon J. Rifkind, Harold R. Medina and myself.

decided various contentions of the parties as to the proper mode of proceeding. A Special Master has been appointed to conduct the taking of depositions and since his appointment has presided a total of 104 days. Numerous witnesses have been extensively examined by plaintiffs and defendants. Between June, 1948 and July 15, 1949, 25,000 pages of testimony have been adduced and well over 100,000 documents examined by adverse parties. In addition, defendants have requested and obtained plaintiffs' consent to the filing of an amended answer which raises new issues. This answer charges that plaintiffs conspired to monopolize the tractor industry on an international scale. Defendants now move for transfer.

The section of the new Judicial Code, which they invoke, provides that, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a).

■ This provision, enacted subsequent to my opinion of April 21, 1948, applies to a "civil action" brought under the anti-trust laws as well as under other laws with special venue provisions. United States v. National City Lines, 1949, 337 U. S. 78, 69 S.Ct. 955; Ex parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 959.

This change in the law clearly disposes of the first ground of my denial of defendants' motion to dismiss, but there remains the second ground—that on the factual merits the doctrine of *forum non conveniens* was not applicable. Plaintiffs urge that this ruling established the "law of the case."

■ Admittedly only one motion of this nature should ordinarily be entertained in an action. However, it is clear that in this situation, defendants have the right to move for transfer. The change in the law is procedural and they may take advantage of it. United States v. National City Lines, supra; Amalgamated Ass'n etc. v. Southern Bus Lines, 5 Cir., 1949, 172 F.2d 946.

### I. Has This Court Power to Transfer under Section 1404(a)?

Plaintiffs contend that defendant Sherman Tractor Co. is not doing business in Michigan and that consequently this action against it is not one which, under the language of the statute, "might have been brought" in Michigan. They conclude that transfer to Michigan is beyond the power of this court, since Sec. 1404(a) requires the transferee district to be one "where (the action) might have been brought", and constitutes a legislative adoption of that element of the non-statutory *forum non conveniens* rule which presupposes as a condition to its application that defendant be amenable to service of process in the assertedly more convenient and non-oppressive forum, and precludes its application except to furnish criteria for choice between two districts where venue is concededly proper. See, Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 506–507, 67 S.Ct. 839, 91 L.Ed. 1055. Plaintiffs support this by reference to the legislative history of the section, to the construction it has received and to the understanding of authorities familiar with the history and purpose of the provision. See, Reviser's Note to 1404(a) in the second draft of the Code, May, 1945 and memorandum of Prof. J. W. Moore dated March 7, 1945 (therein set forth) ; Haves v. Chicago, R. I. & P. R. Co., D.C.Minn.1948, 79 F.Supp. 821; Christopher v. American News Co., 7 Cir., 1949, 176 F.2d 11; Walsh v. Pullman Co., D.C.S.D.N.Y.1949, 89 F.Supp. 762; 3 Moore's Federal Practice, 2139(n.87), 2141 (1948 Ed.).

In opposition, defendants urge (1) that "might have been brought" means that the transferee forum must have jurisdiction over the subject matter, (2) that this language merely requires that plaintiff have capacity to sue in the transferee jurisdiction, (3) that at any rate, Sherman Tractor Co. consents to waive any venue objection it has in the transferee forum, and (4) that since the latter joins in the motion it is thereafter estopped from raising objections to such forum.

■ I must reject defendants' construction of the statute. I have no doubt that the statutory language "where it might have been brought" is a legislative adoption of that condition of the application of *forum non conveniens,* which requires proper venue in at least two forums. Gulf Oil Corp. v. Gilbert, supra; Reviser's note and memorandum to second draft of Code, 1404(a); Hayes v. Chicago, R. I. & P. R. Co., supra; Cinema Amusements v. Loew's, Inc., D.C.Del.1949, 85 F.Supp. 319; Greve v. Gibraltar Enterprises, D.C.N.Mex.1949, 85 F.Supp. 410, 412–413; Walsh v. Pullman Co., supra; Keller-Dorian Colorfilm Corp. v. Eastman Kodak Co., D.C.S.D.N.Y.1949, 88 F.Supp. 863; 3 Moore's Federal Practice, supra. The construction which defendants urge on me is plainly a strained effort to avoid the undesirable effect on them that the legislative history of the statute would appear to require.

The more difficult problem is whether Section 1404(a) requires that venue in the transferee forum be proper as to every one of a number of defendants before transfer may be ordered. Defendants urge that the statutory condition is satisfied if the transferee forum would have been a proper venue as to some of them. They argue that the action has been successfully *brought* in New York, notwithstanding the fact that this City is an improper forum as to some of the defendants. They conclude by the same reasoning that the action might have been *brought* in the venue sense in Detroit even though venue there is improper as to one of them, and that consequently transfer may be ordered.

The legislative history of the section does not indicate that any thought was given to the problem of multiple defendants.[3] Nor do the cases answer the problem directly. Although United States v. National City Lines, supra, seems highly relevant there is no discussion of the problem here present in any of the opinions there rendered.[4] Nevertheless, in that case, the Supreme Court affirmed a transfer in a situation factually similar to the one at hand. There, sixteen defendants were joined in one action brought under The Sherman Act, 15 U.S.C.A. § 1 et seq., by the government. A motion under Section 1404(a) for transfer to Illinois was granted. No finding was made that all the defendants were amenable to process in Illinois; however, in an earlier motion to dismiss under the doctrine of *forum non conveniens,* the trial court accepted a stipulation from defendants that they would not raise the question of whether the forum in whose favor jurisdiction was declined would be a proper venue as to all defendants under Section 5 of the Sherman Act, which controlled venue in that case.[5] This stipulation was before the court in the motion under Section 1404(a), see, 80 F.Supp. 734, 743, and apparently satisfied the District Court that the action was properly transferable under

3. Cf. Moore, Federal Practice 2137, 2141 (1938 Ed.) concerning multiple defendants, and Sec. 1406 of the Code. I do not disregard these comments of Professor Moore, but I do not feel that they are especially relevant to 1404(a), particularly since the language of 1403 differs from the language with which I am concerned, and the provisions are different.

4. See D.C., 7 F.R.D. 393; D.C., 7 F.R.D. 456; 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584; D.C., 80 F.Supp. 734; 337 U.S. 78, 69 S.Ct. 955.

5. Section Five of the Sherman Act authorized the government, as a plaintiff in a civil action under that Act to bring in non-resident defendants whose presence is necessary in the interests of justice. Such defendants may raise the issue of whether their presence is necessary within the meaning of the statute. If such presence is not necessary, presumably the venue being improper, dismissal would follow.

When the action was transferred to Illinois, the "non-resident" defendants would be different from those which were non-residents of California, and accordingly they would appear to have the right to raise the issue.

Whether Section 5 should be characterized as a "venue" provision or not is of no import. It clearly does determine whether a particular defendant is amenable to process in a given case in a given forum. This is the same function that the normal "venue provisions" perform, so for purposes of analysis here, Section 5 may be equated with the venue provisions applicable in this case.

Section 1404(a). That transfer was affirmed by the Supreme Court, 337 U.S. 78, 69 S.Ct. 955, although it was not clear that all defendants were amenable to suit in the transferee forum except by virtue of their consent and stipulation. Thus, if the statutory condition is construed as requiring venue as to all defendants in the transferee forum before transfer can be ordered, I must conclude that National City Lines was, on its facts, wrongly decided by the Supreme Court. I believe I might so hold, since the issue was not argued to the Court and the Court did not purport to make any determination on the question, but I think it more desirable and appropriate to construe the statute so that that decision is consistent with it.

Such a result is possible, if the statutory condition is construed as requiring the transferee forum to be a proper venue as to at least one of the defendants in a multi-defendant case; in such a situation it can fairly be said that the action might have been brought there in a venue sense. Once the statutory condition is met, the result in the National City Lines case suggests that another condition is appropriate: the defendants as to whom the transferee forum is improper must consent to the transfer.[6] If such consent is not given the court would be faced with the problem of forcing defendants not amenable to suit in a transferee jurisdiction to defend themselves there nonetheless, or requiring plaintiff to take a severance. Fortunately, I am not faced with this problem and express no opinion on it.

It is true that under the old *forum non conveniens* doctrine, it was certainly questionable whether a defendant could invoke the doctrine by consenting to be sued in a district where there was improper venue, even in a multi-defendant case. See, Tivoli Realty v. Interstate Circuit, 5 Cir., 1948, 167 F.2d 155, 156–157, certiorari denied 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762.

Indeed, in deciding the earlier motion to dismiss in this case, I held that such consent was insufficient to invoke the doctrine and that venue must exist as to the defendant independent of any stipulation. The reason for such requirement is clear; such a stipulation in one case might be ineffective in the subsequent action in another forum, brought after dismissal of the first case. The venue in the new forum being improper as to the defendant, such defendant would not be amenable to service of process there, and the earlier stipulation would not of a certainty overcome this defect. In the event that the defendant was not available for service, the plaintiff would have to commence a new action in some place where the defendant might be found—possibly in the same forum where the first action had been dismissed. In the meantime the statute of limitations might have run. It would be improper to subject plaintiff to such uncertainties by dismissing the first action.

No such problem now exists. No new process need be served when an action is transferred and there is no question of the statute of limitations. There is, consequently, no practical reason requiring that the transferee forum be a proper venue as to all of several defendants. It is sufficient that the transferee forum be, and highly so, more convenient to all parties and witnesses, that it be a proper venue as to at least one defendant and that the other defendants consent to the transfer. This result, if not required by United States v. National City Lines, supra, is consistent with it.

Accordingly, I conclude that although Sherman Tractor Co. may not be amenable to process in Detroit,—a question I do not decide—I, nevertheless have the power to transfer this action to that city, under Section 1404(a). Sherman has consented to the transfer and the venue in Detroit is proper

---

6. In the National City Lines, case, this consent took the form of a stipulation not to raise the venue issue in the new forum. Such a stipulation is not, it seems to me, necessary here, since I do not see how any question of venue can arise in the transferee forum. The only way venue becomes important is in determining whether an action is transferable under 1404(a), and this determination is made by me.

as to all the other defendants. I now turn to the merits.

II. *Standards and Criteria under Section 1404(a).*

■ This court has held that Section 1404(a) is but a codification of the doctrine of *forum non conveniens*. It has not changed the criteria to be applied in determining the appropriateness of a given forum. Auburn Capitol Theatre Corp. v. Schine Chain Theatres, D.C., 83 F.Supp. 872; cf., Naughton et al. v. Pennsylvania R. Co., D.C.E.D.Pa.1949, 85 F.Supp. 761. Other courts have said that it differs from *forum non conveniens* and introduces "a new principle into Federal judicial procedure." See, e. g. Holtzoff, J. in United States v. E. I. Dupont De Nemours & Co. D.C.D.C.1949, 83 F.Supp. 233.

But, differences in characterization do not necessarily lead to differences in result. It is quite clear that a case in which dismissal under *forum non conveniens* would be improper may be properly transferred under Section 1404(a). See, Jiffy Lubricator Co. v. Stewart-Warner Corp., 4 Cir., 177 F.2d 360; Amalgamated Ass'n v. Southern Bus Lines, supra; Cinema Amusements v. Loew's, Inc., supra. It is also clear that since the remedy available under Section 1404(a)—i. e. transfer —differs from and is less harsh than the remedy available under *forum non conveniens*—i. e. dismissal—the court in the course of balancing the various factors which must be examined to determine the availability of a remedy, as set forth in the Gulf Oil case, supra, will give different emphases to those factors, Cinema Amusements v. Loew's, Inc., supra, and require less of a showing of "abuse of process" while being more willing to grant relief on a showing of inconvenience. Cf., Braucher, The Inconvenient Federal Forum, 60 Harvard L.Rev. 908, 933 (1947). To this degree a new standard can be said to have been established, although the standard would defy precise definition. Further, a new "principle" has certainly been introduced into Federal procedure, in the two amendments to *forum non conveniens* which Section 1404(a) incorporates: transfer instead of dismissal and the applicability of the rule to anti-trust and FELA cases.

It follows that my earlier denial of defendants' motion to dismiss on the factual merits is not conclusive as to relief under Section 1404(a). Amalgamated Ass'n v. Southern Bus Co., supra. But, cf., Naughton v. Pennsylvania R. Co., supra. I must reexamine and reappraise those facts in the light of the remedy afforded by 1404(a). This examination and appraisal must be of the facts as of the date of the motion, giving due cognizance to any changes in the situation effected by the passage of time since my earlier examination.

■ The principal criteria which I consider relevant, derived in part from Gulf Oil Corp. v. Gilbert, supra, and in part from other sources, include: the relative ease of access to sources of proof; the availability of compulsory process to secure the attendance of hostile witnesses and the cost of obtaining willing witnesses; the possibility of a view, if appropriate; the effect of a prolonged trial in New York on defendants' business; the effect of a transfer at this time; and the various public interests involved.

■ Before proceeding to evaluate the facts in the light of these criteria, let me dispose of sundry points argued by the parties in their briefs. First, it remains the law that a movant for relief under 1404(a) must show a preponderant balance in his favor, for it is still only the exceptional case which merits relief under this section. The defendants' suggestion that it is my function to weigh the convenience of the parties and making a nice balance award the suit to that district court which, of several forums, appears to be the most convenient, is rejected. Such a theory would create administrative difficulties entirely unjustified by any beneficial result, require a court to reach a conclusion which could not be reached with any degree of assurance and deprive a plaintiff of any certainty in its selection of venue. Since a defendant might often show that although one forum was not highly inconvenient, another was slightly more desirable, the venue provisions would become little more

than provisions regulating the place of service of summons, and Section 1404(a) would substitute for a litigant's judgment and option as to place of suit, that of the court. Such a change was not contemplated by Congress when it enacted this section. See, Senate Report No. 1559, 80th Cong. 2d Sess. (1948); Ex parte Collett, supra, 337 U.S. at page 62, 69 S.Ct. at page 948 and authorities there cited. A strong balance in favor of the movant must still be shown, although as above indicated, that balance is less than that required under *forum non conveniens.*

Secondly, this court may not, as defendants appear to urge it should, make any determination on the merits of the case. It avails them nothing to argue that the evidence to be supplied by plaintiffs' New York witnesses will be completely rebutted by evidence adduced from defendants' non-New York witnesses. These are issues for the jury. The only question before me is where these issues should be presented to a jury.

Thirdly, this court will disregard the various charges of lack of candor and cooperation in pre-trial proceedings and similar matter, since they are of little assistance in determining the issues raised by these motions. The court realizes that they result from the ardor of controversy, but is hopeful that in the future counsel will exert their best efforts to keep such charges to a minimum.

█ Fourthly, weight must be given, in balancing the criteria listed, to the venue privilege afforded plaintiffs by the anti-trust laws. An extended discussion of that privilege seems unnecessary, it sufficing to say that 1404(a) only purports to correct abuses of that privilege. It does not undermine the policies which motivated Congress to grant the privilege, nor does it deprive plaintiffs of an opportunity to prove their case in a place where proof is available. Ex parte Collett, supra, 337 U.S. at pages

60, 72–74, 69 S.Ct. at pages 947, 953, 959; United States v. National City Lines, supra; Cinema Amusements v. Loew's, Inc., supra; Note, 58 Yale L.J., 1949, 482, 489. Abuses of the special venue privilege may now be corrected by transferring under 1404(a), but it is clear that the privilege, if unabused, may still be invoked by a plaintiff.

█ Having disposed of these preliminaries, I now proceed to the application of the criteria stated to the facts.

(a) *Relative Ease of Access to Sources of Proof:* Defendants claim, in substance, that trial in Detroit would be more convenient to all parties and witnesses since most of the relevant documents and most of the witnesses who have knowledge of the alleged conspiracy are located in or near Detroit. They have submitted, in response to a request by the court, a list of witnesses whom they expect to call in defense and in support of their counterclaim, 131 of whom come from Detroit and 17 of whom come from other places. They urge that the crucial issues in the case are alleged pirating by defendants of plaintiff Ferguson's patented designs and the alleged conspiracy in Detroit. Most of the evidence relevant to these issues, defendants contend, is to be found in Detroit.

Plaintiffs, however, maintain that important parts of their case will be proved by evidence adduced from witnesses from places other than Detroit.[7] They point to the importance of the part played in the alleged conspiracy by the New York defendant, Sherman Tractor Company. Proof of this defendant's activities, they urge, will demonstrate that it joined the alleged conspiracy, that it coerced dealers and distributors, and that it participated in 22 allegedly illegal actions set forth in the complaint. While some of these 22 alleged actions seem of relative unimportance, the proof of others would go far to sustain plaintiffs' version of the facts.

7. Plaintiffs have also submitted a list of some 160 or more potential witnesses, 120 or more of whom are from New York, New Jersey and Connecticut and the rest of whom are from other widely dispersed geographical areas. I do not place special weight on the figures submitted since it is apparent to me that a listing of the number of witnesses is merely cumulative.

When the earlier motion to dismiss was before me, I considered these arguments and found that this forum was not inconvenient as to Sherman, and that "this must be considered as an important factor against the dismissal of the complaint as to the other defendants." 77 F.Supp. 425, at page 433. Defendants now contend, however, that the importance which then attached to the corporate defendant Sherman Tractor has been minimized, by (1) the death of the corporate defendant's president, Eber Sherman, since my earlier opinion, (2) the pending liquidation of Sherman Tractor, (3) the demonstrated unimportance of Sherman Tractor as a member of the alleged conspiracy, the important members of which are Ford Motor Co., Dearborn Motors and their key officials who are individual defendants, and (4) the anticipated removal by certain Sherman Tractor key officials of their homes from New York to Detroit.

First, it is clear that the death of Eber Sherman cannot retroactively withdraw the Tractor Company from a place of importance in the alleged conspiracy, if it was important before he died. It may render proof more difficult by forcing plaintiffs to resort to other witnesses, but plaintiffs are entitled to proceed if they are satisfied that sufficient proof will be available. This follows even though Eber Sherman was the motivating force that put this corporate defendant in the alleged conspiracy.

Second, the liquidation of Sherman Tractor goes only to the availability of a remedy against defendant Sherman Tractor should plaintiffs recover judgment, and has no bearing on the issue presently before me—the availability of sources of proof.

Third, the relative importance of Sherman as a member of the alleged conspiracy is not of especial weight on the issue under discussion. It is this defendant's importance as a source of proof with which I am concerned. Assuming, *arguendo*, that it was a party of secondary importance, proof of its activities as a co-conspirator would nevertheless be evidence against the so-called "principal" defendants.

Defendants argue that similar proofs can be adduced from Detroit sources, if they can be adduced at all. This is no answer. Plaintiffs are entitled to bring the action where evidence is available to them to support their charges. It would be a subversion of the principles implicit in the special venue provisions of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1 et seq., 12 et seq., to give defendants the option of designating the locale where proof must be found.

Plaintiffs point to the importance of New York evidence relating to the failure of their financing efforts allegedly caused by defendants' interference. The latter assert that other evidence from mid-west sources of proof will demonstrate that such failure resulted from other causes. This again is an issue for the jury, and it is apparent that the proof to be offered on this will come from widely different geographical areas, one of which will be New York City.

Plaintiffs also point to a number of other New York or non-Detroit sources of proof in relation to the efforts of Ferguson to obtain a new tractor manufacturer; the Ford, Bacon, and Davis surveys of defendants' tractor operations prior to the "break", conducted in Detroit by a New York firm; the relation of Commercial Investment Trust, a New York corporation, to the defendants and to Dearborn Motors in particular; the alleged coercion of dealers outside of Detroit; the Ford International Corporation's part in the alleged conspiracy, if any; the non-Detroit Sands affair; and the issues raised by defendants' counterclaim charging a world-wide conspiracy by plaintiffs in restraint of trade.

Such a showing by plaintiffs renders defendants' burden all but insurmountable. While many of these issues may lose importance as the case progresses, their presence demonstrates the extent of both parties' alleged activities.

To overcome this burden, defendants urge: (1) the insubstantiality of these issues; (2) the substantiality of their own Detroit proof contradicting plaintiffs' non-Detroit proof; and (3) the greater proximity of Detroit to most of the sources of proof.

The first and second contentions are for the trial judge and jury. The third raises issues composed of a combination of individual factors with so many variables that their resolution is all but impossible. To sustain defendants on the third ground, I would be obliged to decide how many witnesses are closer and to what extent to Detroit; whether their evidence is actually to be used (since neither side binds itself to call any or all of them); whether, although Detroit is closer, New York is more easily accessible because of superior transportation facilities; and so on. For example, suppliers involved in this case come from Detroit, Pennsylvania, Nebraska, Ohio, Illinois, Texas, South Dakota, Iowa and California. The distributors and dealers are more numerous and equally well dispersed. Of course, all of them will not be called as witnesses; which will and which will not is unclear. With such a confusion of factors, no balance of convenience can be struck with any degree of certainty or fairness, and were it to be attempted the result would be a tentative balance based upon variable facts which for all concerned might or might not represent an accurate appraisal of the relative convenience of conducting the trial at one or another of two alternative forums. The case is different when the witnesses to an accident are all to be found in one place. Cf. Ex parte Collett, supra.

Let me add a word concerning documentary proofs. The inconvenience which results from trying this action in New York when many of the relevant documents abide in Detroit was anticipated and considered by this court when the earlier motion was pending. Defendants argue, however, that it has now become evident that most of the relevant documents are in Detroit and that obvious inconvenience has resulted. There is inconvenience in furnishing documents no matter where the trial be held. To date of submission of the affidavits here considered, plaintiffs have furnished "well over 100,000 documents from Detroit, England and Ireland." As the case proceeds and the issues develop, documents from areas other than Detroit may take on additional importance, particularly in relation to defendants' counterclaim, which certainly cannot be said to be "localized in Detroit". Accordingly, the finding of inconvenience in furnishing documents is to some degree balanced by the fact that no matter where the action is tried, documents will have to be transported. Thus, although the balance of convenience is in defendants' favor, it is certainly not overwhelming.

I conclude that 1404(a) does not authorize this court to grant relief on the meticulous balancing of variable, uncertain factors which would be necessary. New York may not be the most convenient forum, but the nature of the litigation renders it impossible to strike a balance with any degree of assurance, and New York is one of several sources of proof relevant to the issues. A preponderant balance in favor of the movant must be shown, and no such balance in favor of Detroit has been presented insofar as the relative ease of access to sources of proof is concerned.

*(b) Availability of Compulsory Process for Attendance of Unwilling Witnesses;* This factor requires examination of the contentions of both plaintiffs and defendants.

(1) Plaintiffs, emphasizing the importance of Sherman Tractor Co. and the death of its president, have submitted convincing affidavits of the hostility of a witness—one, Hugh Stanley Jenkins. Jenkins was a long time associate of the deceased, Eber Sherman, and is a potential source of important proof for plaintiffs if his testimony can be compelled. This court can, but the Detroit court cannot, compel his attendance and testimony. Plaintiffs should not be deprived of the opportunity to exploit this source of proof in attempting to demonstrate the validity of their claims.

(2) Defendants allege that Sherman Tractor will be unable to compel the testimony of important witnesses from Detroit necessary to its defense, in the absence of compulsory process, and urge this as a ground for transfer. The witnesses are not identified in any way, nor is the necessity for their testimony explained or the cause for their hostility noted. I find, therefore, that the necessity of calling such witnesses is purely conjectural, and that such claim has no weight.

*(c) The Possibility of a View:* Defendants state that a view of both plaintiffs' and defendant's plants in Michigan will be necessary to defendants to maintain their version of the facts on the issues of patent infringement and damages. While a view would provide relevant evidence, at least on the issue of damages, and might be thought proper by a court sitting in Detroit, there are other methods, equally effective if not so dramatic, available to defendants to prove their defense on these issues. This is not a case where a view is imperative.

*(d) Effect on Defendants from Detroit of Holding the Trial in New York:* The presence of the Detroit parties and witnesses in New York during the trial will impede the conduct of both plaintiffs' and defendants' businesses. Yet, a good part of this inconvenience would exist wherever the action was tried, since the individual defendants would find it desirable to attend the daily sessions of the trial if it were held in Detroit, just as they would find it desirable to so attend if it were held in New York. This was recognized on the earlier motion. Insofar as the "current business recession" is urged as differentiating the facts from those previously considered, I hesitate to find that the ground urged requires a conclusion different from that reached on the prior motion. The alleged "business recession" was "current" when this motion was made and these affidavits filed. Since then the alleged "recession" has taken on a less recessive aspect; tomorrow it may become an inflation or simply continued prosperity under a more competitive market. Such a factor as current business conditions is too variable and unpredictable to be given great weight in a motion such as this concerning a controversy such as this one, which can be expected to be in the courts for some time. I recognize the inconvenience involved but am not persuaded that it is sufficient to require transfer. It results from the alleged activities of defendants or their agents in this district and elsewhere, outside Detroit as well as within. Since their activities extend far beyond the confines of Detroit, they run the risk of lawsuits outside that city.

*(e) Effect of a Change of Forum at this Time:* The action was brought in this district on January 8, 1948. A brief sketch of the subsequent history of the litigation appears in the statement of facts made herein. Plaintiffs contend that should a transfer be ordered, there will occur a disruption of the proceedings above described and a loss of the services of the Special Master who was appointed to conduct the taking of depositions. Both parties admit that the Master has greatly facilitated the conduct of these proceedings. This court has been greatly benefited by his competence. Defendants, in passing, suggest that the Special Master could be transferred with the action, but it is far from clear that this could be practically effected and much depends on the wishes of the Master. Certainly, the loss of the Special Master and the interruption of the pre-trial proceedings militate to some degree against transfer. However, since I might reserve judgment on this motion until the pre-trial proceedings are over, and then transfer, thus avoiding the problem presented, I hardly think this consideration should weigh appreciably in my judgment.

Other considerations urged by plaintiffs— the investment they have made in this district, the fact that five judges of this court are somewhat familiar with this litigation, and the assertedly higher costs to the plaintiff of conducting this case in Detroit are rejected, the first two because they do not merit consideration (Shore Amusements v. Paramount, Civ.No.1120-47, D.C.D.C., June 15, 1949) and the last because the facts do not support the argument made.

*(f) Interests of Justice:* As I have indicated above, this is not a "local" controversy. The corporate parties maintain their principal places of business in Detroit, it is true. But, that does not make the controversy a local one. The alleged conspiracies of both are international in scope and impact. That the source of so much of the proof will be Detroit is not controlling; New York, England, Ireland and other places are also sources of proof. Further, New York has a substantial contact with the litigation in that important parts of the con-

spiracy are alleged to have occurred in New York. I refer principally to that part of defendants' alleged conspiracy pertaining to interference with the financing of plaintiffs' business and the activities of Sherman Tractor. Had this action been brought in a forum which had no contact at all with the conspiracy except that the conspirators happened to be doing business there, the case might differ. New York is the site of events and occurrences which gave rise to the charge. Accordingly, jury service by New York citizens is not an imposition, nor is it one on this court no matter what the state of its calendar.

Defendants also claim that the interests of justice require transfer so that the trial may be had within reach and view of the interested parties, and that in light of the charges of fraud and personal misconduct, defendants are entitled to an opportunity to vindicate their reputations in their home forum. Both contentions find their answer in what was said above concerning the non-local nature of this litigation. Since defendants' alleged illegal activities are nation—and worldwide, they can hardly now be heard to say that it is of particular concern to them to defend their reputations at home. It is of importance to them to defend themselves in the community in which they live and function, but that community, in which their good names are at stake, is not restricted to Detroit, or Michigan, but encompasses the entire nation and a substantial part of the world.

I conclude on the basis of all the considerations which have been brought to my attention, those which I have discussed as well as those many others urged upon me, too numerous and complex for adequate discussion within the length reasonable for a judicial opinion, that although defendants have persuaded me that there may be a balance of convenience in their favor as the facts have been presented, that balance lacks sufficient preponderance to convince me that I would be justified in disturbing plaintiffs' choice of forum. In other words, plaintiffs have demonstrated sufficient reason for retaining jurisdiction in this forum. Defendants' motions must be denied.