Cornelius HAWKINS, a/k/a Connie Hawkins, Plaintiff,

v.

NATIONAL BASKETBALL ASSOCIATION, an unincorporated association, J. Walter Kennedy, individually and as President of the National Basketball Association, Zollner Corporation, a corporation, Cincinnati Basketball Club Co., a corporation, California Sports, Incorporated, a corporation, Madison Square Garden Corporation, a corporation, St. Louis Hawks Basketball Club, Inc., a corporation, the Baltimore Bullets Basketball Club, Inc., a corporation, and RIKO Enterprises, Inc., a corporation, Defendants.

Civ. A. No. 66–1320.

United States District Court
W. D. Pennsylvania.

Jan. 23, 1969.

See also 288 F.Supp. 614.

Roslyn M. Litman, and Howard A. Specter, of Litman, Litman & Harris, Pittsburgh, Pa., for plaintiff.

John G. Buchanan, Jr., of Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

MARSH, District Judge.

The defendants have filed a motion pursuant to § 1404(a), 28 U.S.C., to transfer this private anti-trust action to the Southern District of New York.[1] The action might have been brought in that district since all defendants were transacting business therein. In my judgment the motion should be denied.

In anti-trust actions the defendants must show a preponderant balance of inconvenience in order to overcome plaintiff's privilege to choose the forum. Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950); Polychrome Corp. v. Minnesota Mining & Manufacturing Co., 259 F.Supp. 330, 335 (S.D.N.Y.1966) (anti-trust cases). Cf. A. Olinick & Sons v. Dempster Brothers, Inc., 365 F.2d 439 (2d Cir. 1966); Golconda Mining Corporation v. Herlands, 365 F.2d 856 (2d Cir. 1966). And see cases cited in Vol. 1, Later Case Service, covering Vols. 1–12

1. A timely motion was denied without prejudice pending disposition of a motion to dismiss for lack of venue which was denied after extensive discovery. Hawkins v. National Basketball Association, 288 F.Supp. 614 (W.D.Pa.1968).

A.L.R.2d pp. 1015, 1017, § 2.4 [New] Strong balance in defendant's favor, and § 2.5.

Unlike a personal injury action, this anti-trust suit is not local in nature as defendants contend, but partakes of a multi-state interest. The ten teams who were members of the National Basketball Association (Association) at the time this action was filed are located in nine states; their teams have played basketball in many cities throughout the country, ranging from California to Massachusetts, including Pittsburgh. An officer of each member of the joint venture is represented on the Board of Governors which controls the policies of the Association.[2] Cf. Ferguson v. Ford Motor Co., 89 F.Supp. 45, 54 (S.D.N.Y.1950), aff'd sub nom., Ford Motor Co. v. Ryan, supra; United States v. Scott & Williams, 88 F.Supp. 531, 535 (S.D.N.Y.1950). If the defendants were not justified in excluding plaintiff as a playing member of the Association, that decision had a multi-state effect since it was binding on the ten far-flung members in the Association[3] and resulted in the allegedly illegal boycott of plaintiff as a professional player who sustained the injurious financial impact therefrom in this district where he resided.

The statutory factors to be considered are "the convenience of parties and witnesses, in the interest of justice", § 1404 (a), 28 U.S.C., with the object of making the "judicial process cheaper and more convenient and, if possible, more prompt." All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952), approved by the Supreme Court in Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

It appears that three of the defendants (the Association, Madison Square Garden

Corporation, and J. Walter Kennedy) have their only business offices in New York City, and that two of the corporate defendants (Riko Enterprises, Inc., Philadelphia, and The Baltimore Bullets Basketball Club, Inc., Baltimore) are located closer to the Southern District of New York than to this district. The four other coporate defendants (Zollner Corporation, Indiana; Cincinnatti Basketball Club Co., Ohio; California Sports, Incorporated, California; and St. Louis Hawks Basketball Club, Inc.,[4] Missouri) are located closer to this district than to the Southern District of New York. Two members of the joint venture who are not defendants (The Chicago Professional Basketball Corporation and the San Francisco Warriors) are located closer to this district, while the remaining member (Boston Celtics Basketball Club) is closer to the Southern District of New York.

The defendants expect that the defendant Kennedy, six members of the Board of Governors, and Ben Kerner, a former member of the Board of Governors, will testify at the trial. Of these parties, four live closer to the Southern District of New York and four live closer to this district. See: Answer of the Association (filed November 4, 1968) to Interrogatory No. 35.

Although it is shown that the defendants hold some meetings in New York, and play some basketball games there, and no defendant has an office in Pittsburgh and no basketball games are to be played there, these facts bear no significance on the issue of whether this district is an inconvenient forum.

The plaintiff has been a resident of Pittsburgh, Pennsylvania, in this district since 1961, although currently, for about six months of the year, he travels as a player with the Minnesota Pipers of the American Basketball Association. In the

2. Id., p. 616.

3. Since the action was commenced, it appears that the joint venture has been expanded and its 14 members are now located in 12 states. See: Answers of

Association (filed November 4, 1968) to Interrogatory No. 34.

4. Defendants allege that the name of St. Louis Hawks Basketball Club, Inc. has been changed to Rady Enterprises, Inc.

summer, he is hired by the City of Pittsburgh to conduct a basketball clinic for poor children.

██ The defendants have failed to show that it will be more convenient for the parties if the action is transferred to the Southern District of New York. Indeed the Western District of Pennsylvania is closer for a majority of the parties, and if the officers of all the defendants choose to attend the trial, their aggregate costs of transportation to Pittsburgh will be less than their costs of transportation to New York. For all the parties—plaintiff and defendants—the balance of convenience is opposed to a transfer.

It is asserted that it is more convenient for the Association, Madison Square Garden Corporation, Riko Enterprises, Inc., and The Baltimore Bullets Basketball Club, Inc. to produce their records and files in New York, but it has not been demonstrated in what respect any of these records or files are relevant or necessary for trial purposes. Even if they are, it does not appear that the records and files are so voluminous that they cannot be conveniently transported to Pittsburgh from New York, Philadelphia and Baltimore.[5]

The defendants assert that their witnesses are unwilling to testify in Pittsburgh and will be inconvenienced in having to travel to that city. The plaintiff makes a similar assertion with respect to his witnesses.

██ I am persuaded to consider only the convenience or inconvenience of those witnesses who have been identified as probable witnesses and the substance of whose testimony appears to be competent and material to the trial. Struthers Scientific & Int. Corp. v. General Foods Corp., 290 F.Supp. 122, 127 (S.D.Texas 1968). It is necessary to set out by way of affidavit the substance of the evidence of witnesses in order that its materiality can be considered. Consequently, the affidavit of George G. Gallantz, attorney for the defendant Association, suggesting that "it is most probable that discovery in this action will lead to other witnesses who have knowledge of the circumstances surrounding plaintiff's alleged overt acts", and who are likely residents of the Southern District of New York, cannot be considered as lending any weight. Cf. Chicago, Rock Island & Pac. R. Co. v. Hugh Breeding, Inc., 232 F.2d 584, 588 (10th Cir. 1956); Davis v. American Viscose Corporation, 159 F.Supp. 218, 219

---

5. J. Walter Kennedy, a defendant and Commissioner of the Association, in his deposition of October 21, 1968, and in Interrogatories Nos. 5 and 6, the answers to which were filed November 4, 1968, with reference to records of the Association, was asked the following questions and gave the following answers:
Deposition, p. 44:

"Q With respect to these records [of the Association], can you tell me with the exception of the letters that are part of the pledings [sic] in this case, from and to you and Mr. David Litman, do you have any other records or correspondence deal-with Cornelius Hawkins?

"A To the best of my knowledge, no.

"Q Are there any other records of which you are aware that make any reference to Cornelius Hawkins other than National Basketball Association records that are located here in New York City?

"A To the best of my knowledge, no."
Interrogatory No. 5:

"5. State whether the N.B.A. presently has any records relative to this law suit and/or the plaintiff at its offices in New York City."
Answer to Interrogatory No. 5:
"5. Yes."
Interrogatory No. 6(e):
"(e) The amount of storage space required for those records which you expect to be required at the trial of this action."
Answer to Interrogatory No. 6(e):
"(e) One carton."
Defendants, Madison Square Garden Corporation, Riko Enterprises, Inc., and The Baltimore Bullets Basketball Club, Inc., in their answers (filed November 4-5, 1968) to interrogatory No. 3, were asked the following question and gave the following answer:
Interrogatory No. 3:
"3. State whether you presently have any records relative to the plaintiff and/or this lawsuit."
Answer to Interrogatory No. 3:
"3. Defendant does not presently know of any such records."

(W.D.Pa.1958); Ferguson v. Ford Motor Co., supra, 89 F.Supp. at p. 53.

For the same reason, the inconvenience of the ten witnesses named by the plaintiff cannot be considered since the substance and necessity of their testimony is not clearly revealed.

It is alleged in the affidavit of Mr. Gallantz, on behalf of the defendants, that, upon information and belief, Joseph Hacken and Jacob Molinas, two potential witnesses for defendants are presently incarcerated in a New York State prison; that defendants "cannot at this time definitely state that they will subpoena these two men as witnesses." Hacken and Molinas, by their affidavits, alleged that they are residing in New York, and that they have not been contacted by any representatives of the Association. The affidavit of S. David Litman, an attorney for the plaintiff, reveals that he interviewed these men in New York and that they are not presently incarcerated.[6] Hacken and Molinas state that if called to testify by any party they would have no objection to doing so in this district or in the Southern District of New York. Thus, defendants have not shown that they rely on any relevant testimony of either Hacken or Molinas. Since the substance of their testimony does not appear, their inconvenience or unavailability as witnesses for the defendants is to be disregarded.

The alleged testimony of Detective Laurendi, a proposed defense witness, cannot be accorded much weight in support of a transfer because the uncontradicted affidavit of Mr. Litman indicates that Mr. Laurendi's testimony with respect to plaintiff's illegal conduct would be hearsay and inadmissible.

On the other hand, defendants identify Detective Wheaton who allegedly took incriminating statements from the plaintiff, which testimony would be relevant and competent. Wheaton would be inconvenienced in traveling to Pittsburgh to testify. He is beyond the subpoena power of this court, and would require the permission of his superiors to travel and testify. However, there is no conclusive showing that such permission would be withheld, difficult to procure, or that Wheaton would refuse to testify in Pittsburgh.

Wheaton's inconvenience as a defense witness is balanced by that of Mr. Litman, a resident of this district, who expects to be a witness for the plaintiff to recount his efforts to have plaintiff "admitted by the N.B.A. and their arbitrariness in refusing to consider him." This proposed testimony seems to be relevant and competent.

Thus, defendants have not shown that their probable witnesses will be more inconvenienced in a trial in this district than would plaintiff's witnesses if a transfer were granted. Assuming that other sources of proof for both sides are to be found in New York, pretrial investigation has not revealed their importance for the purpose of establishing the Southern District of New York as the most convenient forum. Only minimal weight may be given to conjecture and speculation. Cf. Ferguson v. Ford Motor Co., supra, 89 F.Supp. at p. 53.

It appears that the congested civil docket in this district is not as congested as that in the Southern District of New York.[7] This is a factor militating against a transfer. It is likely that plaintiff will receive an earlier trial here than in New York, which probability is clearly in the interest of justice. Cf. Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at p. 508, 67 S.Ct. 839; All States Freight, Inc. v. Modarelli, supra.

In the case at bar, plaintiff has properly exercised his venue privilege by in-

---

6. Neil G. Epstein, Esq. an attorney for the defendants, testified that he was informed that Hacken and Molinas were at liberty on parole. The expected dates of expiration of their paroles do not appear. (Hearing of November 14, 1968.)

7. See 1967 Annual Report of the Director of the Administrative Office of the United States Courts.

itiating his action in the forum of his residence. No unfair advantage appears to have been taken of any defendant in so doing, and no forum shopping, vexation, harassment, oppression or undue hardship upon defendants has been established. The pendent count in the original complaint involving the law of New York has been deleted in the amended complaint. The convenience of the parties and witnesses seems practically in balance. In these circumstances, and in the interest of justice, I think that the plaintiff's choice of forum should not be disturbed.

An appropriate order will be entered.