**UNITED CONSOLIDATED INDUS-
TRIES, INC., et al.**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 71-1397.

United States District Court,
E. D. Pennsylvania.

May 11, 1972.

Blank, Rome, Klaus, & Comisky by Philip Patterson, Philadelphia, Pa., for plaintiffs.

Schnader, Harrison, Segal & Lewis, by W. Bradley Ward, Philadelphia, Pa., Howrey, Simon, Baker & Murchison, by

Michael Graney, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

In this action, plaintiffs allege that defendant General Motors Corporation ("GM"), through its A.C. Spark Plug Division ("A.C.") subsidiary, violated Sections 1 and 2 of the Sherman Act and breached certain contracts by terminating distributor agreements with plaintiffs. The purported motive of these terminations was to prevent plaintiffs from making distributor sales at prices below defendant's suggested prices and from making distributor sales outside an "area of primary responsibility." Defendant now moves, pursuant to 28 U.S.C. § 1404(a),[1] to transfer this action to the District of Maryland. Upon consideration of oral argument, memoranda, affidavits and interrogatories, we grant defendant's motion for the reasons set forth below.

A review of the background facts makes clear that this action could have been brought in Maryland. These facts also show, almost ineluctably, that the interests of § 1404(a) will be substantially subserved by transferring this case. Plaintiff United Consolidated Industries, Inc. ("UCI") is a Delaware corporation with its principal office in Baltimore, Maryland, and is a holding company with seven subsidiary warehouse distributors of automotive parts, including the other two plaintiffs, United Warehouse Distributors, Inc. ("United") and PAP Warehouse Distributors, Inc. ("PAP"). United is a Maryland corporation with its principal office in Baltimore; PAP is a Connecticut corporation with its principal office in Port Chester, New York. Of UCI's remaining five subsidiaries, two are located in Maryland, two in Virginia, and one in Washington, D.C. None of plaintiffs

1. 28 U.S.C. § 1404(a) provides:
"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

maintains offices in the Eastern District of Pennsylvania nor is any of them licensed to do business in this state. Also located in the District of Maryland, in Chevy Chase, is the A.C. regional headquarters immediately responsible for the area in which UCI and its subsidiaries operate, except for PAP in New York.[2] A.C. maintains no offices in this forum.

Section 1404(a)'s requirement of "convenience of the parties" would clearly be satisfied by transfer of this case. In affidavits submitted by defendant, defendant's counsel and an A.C. executive aver that all of the A.C. personnel and documents having any direct relationship to plaintiffs' operations, as well as to those of UCI's non-party subsidiaries, are located either at the A.C. regional headquarters in Chevy Chase or at A.C.'s national headquarters in Flint, Michigan, except for A.C. personnel and documents dealing with PAP in New York. Clearly, in terms of transporting witnesses and documents for purposes of discovery and trial, the Maryland forum must be more convenient for defendant than this forum. Moreover, trial in Maryland would be substantially less disruptive to A.C.'s business operations than would trial in Philadelphia since A.C. personnel serving as witnesses and trial advisors from Chevy Chase could continue their day-to-day operations at their home office, and A.C. personnel from Flint and New York could maintain contact with their regular operations through the Chevy Chase office. *See* Trans United Industries, Inc. v. Renard Linoleum and Rug Co., 212 F. Supp. 373 (E.D.Pa.1962). If trial were held in Philadelphia, A.C. personnel from Chevy Chase, as well as Flint and New York, would be distant from their base of operations, and there would be no local A.C. office for any of them to use. Plaintiffs' contentions to the contrary notwithstanding, we do not think that G.M.'s General Motors Acceptance Corporation office in Philadelphia or its Chevrolet Division or Communications Division in King of Prussia, Pennsylvania, constitutes a sufficiently satisfactory substitute base of operations for A.C. personnel to negate defendant's "disruption of business" argument.

Since the main offices of two of the three plaintiffs are located in Baltimore, it is hardly surprising that plaintiffs have not argued that a Maryland forum would be any more inconvenient for them than a Philadelphia forum. Baltimore-based UCI and United would suffer no disruption of business or undue costs because of witnesses or documents called for discovery or trial. And the increased burden borne by the third plaintiff, PAP in New York, of bringing documents and personnel to Baltimore rather than to Philadelphia, is insignificant compared to the burden of bringing all of defendant's personnel and documents from Chevy Chase and Flint to Philadelphia.

The above analysis of "convenience of the parties" discloses that the most convenient forum for witnesses is probably also in Maryland since most of the relevant witnesses for any of the parties are from either Maryland or Michigan. Defendant has recited in its affidavits the titles and some names of A.C. personnel it expects to call as witnesses and the subject matter about which each is expected to testify. All such proposed witnesses are from either Chevy Chase or Flint; some possibly may come from New York. Furthermore, to help refute charges of antitrust violations defendant states that it also intends to call personnel from RPS Products, Inc., ("RPS"). RPS is a wholesale distributor of automotive parts with its principal office in Baltimore; it was originally named as a defendant in this action and charged as a co-conspirator with defendant GM in the various violations alleged. RPS neither owns nor operates any jobber outlets or warehouses in the Eastern District of Pennsylvania, and for that rea-

---

2. Prior to January 1971, this regional headquarters was located in Philadelphia, Pennsylvania.

son, among others, moved to dismiss for lack of venue. Plaintiffs entered no objection and the motion was granted. Defendant GM maintains, however, that even though RPS is no longer a named party, the charge of conspiracy between GM and RPS remains, and that, in any event, regardless of any changes that might be made in any subsequent amended complaint, RPS must still be considered a central figure in the case. We agree with defendant on the likelihood that RPS will play a key role in this suit. Accordingly, we also agree with defendant's contention that the "interests of justice" of § 1404(a) will be furthered by a Maryland forum because RPS witnesses will be subject to subpoena in Baltimore but not in Philadelphia. "Trial by deposition" with respect to certain key witnesses, thereby, will be avoided. Pacific Car & Foundry Co. v. Pence, 403 F.2d 949 (9th Cir. 1968); Axe-Houghton Fund, Inc. v. Atlantic Research Corp., 227 F.Supp. 521 (S.D.N.Y.1964).

Plaintiffs counter defendant's "convenience of witnesses" argument with the proposition that before witnesses can be appraised for purposes of convenience under § 1404(a) the movant must first show, by way of affidavit, the substance and relevance of the proposed witnesses' testimony.[3] Such a showing, plaintiffs contend, has not been made. We cannot accept plaintiffs' position. First, we believe that defendant has set forth with as great a degree of particularity as can be expected at this early stage of the case the witnesses expected to be called and the general substance of their testimony. Second, plaintiffs' argument is, in any case, irrelevant in the present situation because no matter which witnesses defendant might call, most, if not all, will be either A.C. personnel from Chevy Chase or Flint

(and possibly New York) or RPS personnel from Baltimore. As noted above, the convenience of these witnesses, almost by definition, is to be found not in Philadelphia but in Baltimore.

In considering the convenience of plaintiff's witnesses and the "interests of justice" in having plaintiffs' witnesses present for trial, plaintiffs vigorously assert that three of their most important witnesses live in the Philadelphia area and are probably not subject to process originating in Baltimore. These witnesses are warehouse distributors and jobbers of automotive parts who formerly transacted business with A.C. They purportedly would testify that in 1963 A.C. exerted coercive pressure on them to adhere to A.C.'s suggested resale price program. Since none of these witnesses is an employee of any of the plaintiffs, the relevance of their testimony about injury to themselves rather than to plaintiffs can only be based on a claim by plaintiff of nation-wide conspiracy by A.C. Plaintiffs assert that their complaint, when fairly read, contains such a claim.[4]

We are inclined to agree with the defendant, without so ruling in his favor, that plaintiffs complaint does not set forth a claim of nation-wide conspiracy. The whole thrust of the complaint is that United and UCI were injured by A.C. in the Maryland area and PAP by A.C. in the Port Chester, New York region. The complaint makes no reference to any other geographical area nor does it use any phrases like "nation-wide" or "national". Second, we also agree with defendant that, even if the original complaint can be read to include an allegation of a nation-wide conspiracy, the testimony of these witnesses concerning economic harm to non-parties is of minimal significance, compared with the testimony of plaintiffs' personnel from

---

3. See, e. g., Hawkins v. National Basketball Association, 295 F.Supp. 103, 106 (W.D.Pa.1969).

4. We are informed that a "proposed amended complaint" has been served on defendant and includes specific allegations of a nation-wide conspiracy. Leave of court to file the new complaint, however, has not yet been sought.

Maryland and Port Chester, because in order to sustain its cause of action, whether it be nation-wide or not, plaintiffs must first show that they, the *plaintiffs*, suffered economic harm as a result of defendant's illegal conduct. Simpson v. Union Oil Co. of Calif., 311 F.2d 764 (9th Cir.), rev'd on other grounds, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98, rehearing denied, 377 U.S. 949, 84 S.Ct. 1349, 12 L.Ed.2d 313, on remand 270 F.Supp. 754 (N.D.Cal. 1967); Westor Theatres v. Warner Bros. Pictures, 41 F.Supp. 757 (D.N.J. 1941). Thus, at this stage, the doubtful relevance of the testimony of plaintiffs' three non-party witnesses from Philadelphia appears to be clearly outweighed by the highly probable relevance of the testimony of the RPS witnesses from Baltimore. We might add at this point that if plaintiffs have in fact made out a claim of national conspiracy, Baltimore would be just as convenient for witnesses as Philadelphia, and plaintiffs should be able to find witnesses within subpoena range of Baltimore whose testimony would be comparable to that of the Philadelphia witnesses. In fact, defendant's answers to plaintiffs special interrogatories (directed to the issue of venue only) indicate that there are more jobbers and warehouse distributors in Maryland than in the Eastern District of Pennsylvania with whom A.C. has terminated relations since January, 1964.

Finally, plaintiffs claim that because they have alleged a nation-wide conspiracy the action does not really focus on any particular district and their choice of forum, therefore, should not be disturbed. For this proposition, plaintiffs rely on Bogosian v. Gulf Oil Corp., 337 F.Supp. 1230 (E.D.Pa., filed Dec. 15, 1971), and United States v. Scott & Williams, Inc., 88 F.Supp. 531 (S.D.N.Y. 1950). First, we are reluctant to make a transfer ruling based on an allegation of national conspiracy when, as we noted above, there exists substantial doubt as to whether plaintiffs' complaint can be read to include such an allegation. In

*Bogosian* and *Scott & Williams* there was no uncertainty that a claim of nation-wide violations had been made. Second, even were we to concede that plaintiffs have properly alleged a national conspiracy, any convenience derived from permitting this district to remain the forum for a case of national scope must, at this juncture, be considered highly speculative when compared with the convincing and concrete convenience of the Maryland forum for proof of the essential element of plaintiffs' case: *i. e.*, harm to themselves.

 We are aware that on a § 1404(a) motion to transfer the plaintiff's choice of forum is normally entitled to great weight, Clendenin v. United Fruit Co., 214 F.Supp. 137 (E.D.Pa. 1963) and that the moving party must sustain his burden of showing that the statutory considerations are satisfied by a "preponderance of the facts." Biedrzycki v. Alcoa Steamship Co., 191 F. Supp. 895 (E.D.Pa.1961). We believe that defendant has more than carried its burden. Defendant has shown that it would be substantially inconvenienced by continuation of this action in this District rather than in Baltimore. Plaintiffs, on the other hand, have been unable to show any inconvenience to themselves which would arise from transferring this case. Indeed, it is difficult to imagine what convenience plaintiffs see in maintaining the action here. In fact, plaintiffs counsel stated at oral argument and in his memorandum of law that one of the main reasons, if not the sole reason, that plaintiffs brought this action in this District was because plaintiffs were under the mistaken impression, when the complaint was prepared and filed, that A.C.'s regional headquarters was still located in Philadelphia. It would appear, then, that A.C.'s presence in Philadelphia provided this case with its only nexus with this District. Now that A.C., with all its sources of proof, has been removed from the District, it follows that the nexus of this case with this forum has likewise been removed. Plaintiffs only remaining connection

with this District is the presence here of its counsel, and the convenience of counsel has never been a relevant consideration on a motion to transfer. Triangle Industries, Inc. v. Kennecott Copper Corp., 325 F.Supp. 150 (E.D.Pa.1971).

To conclude, we find appropriate here the language of the Court in *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968):

> "We are left, then, with a choice of forum supported only by the fact that it was chosen. Such a choice cannot prevail under § 1404(a) against the showing of inconvenience here made by the petitioner." 403 F.2d at 955.